IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff, | : | CASE NO. 2:16-CV-171 |
| | : | |
| v. | : | |
| | : | |
| THE OHIO STATE | : | JUDGE SMITH |
| UNIVERSITY, et. al., | : | MAGISTRATE JUDGE VASCURA |
| | : | |
| Defendants. | : | |

## UNITED STATES DEPARTMENT OF EDUCATION'S
## MOTION TO QUASH SUBPOENA

Nonparty the United States Department of Education hereby moves the Court to quash the subpoena issued from this Court by attorney Eric Rosenberg on behalf of Plaintiff John Doe on December 27, 2017, purporting to subpoena documents from the United States Department of Education, Office for Civil Rights. Federal regulations and Supreme Court precedent govern the disclosure of any information acquired by an employee of the agency; because the Department of Education's Acting Assistant Secretary for Civil Rights has determined that compliance with this subpoena is not appropriate under the Federal Rules of Civil Procedure and those regulations, the subpoena must be quashed.

The reasons for this motion are more fully set forth in the attached Memorandum in Support.

(signature on following page)

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

s/Leah M. Wolfe
LEAH M. WOLFE (0093299)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
Office: (614) 469-5715
Fax: (614) 469-5240
E-mail: leah.wolfe@usdoj.gov

OF COUNSEL:

Vanessa Santos
Michelle Tucker
Deborah Friendly
U.S. Department of Education
Office of the General Counsel
Division of Educational Equity
400 Maryland Ave. SW, Rm. 6E236
Washington, DC 20202

## MEMORANDUM IN SUPPORT

**I.   BACKGROUND**

Plaintiff John Doe, a former student and employee of The Ohio State University ("OSU"), commenced this lawsuit on February 24, 2016, against Defendants OSU, various OSU officials, and former OSU student Jane Doe. Compl., ECF No. 1. His claims stem from OSU's investigation of a sexual misconduct claim Jane Doe made against him in 2015; in short, Plaintiff claims that OSU's investigation was inaccurate, biased, and procedurally deficient. *See generally* Second Amnd. Compl., ECF No. 20.

Plaintiff amended his complaint twice, ECF Nos. 3 & 20, and, following motions to dismiss by all defendants and the stipulated dismissal of Jane Doe, *see* ECF Nos. 23 & 25; 28, the Court dismissed all but Count III—a claim for erroneous outcome—of Plaintiff's Second Amended Complaint. *See* Opinion & Order, ECF No. 50, at p. 49.

Non-party the United States Department of Education ("ED") oversees the implementation of Title IX of the Educational Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, in educational programs or activities that receive Federal funds. Title IX prohibits sex discrimination—including sexual misconduct—in all such programs and activities. Plaintiff theorizes that OSU's investigation of the accusation of sexual assault against him was motivated by ED's policies, guidance, and concomitant investigations of OSU's implementation of Title IX in sexual misconduct investigations. *See generally* Third Amnd. Compl., ECF No. 36; *see also* January Email, attached hereto as Exhibit A, at p. 1. Plaintiff further theorizes that such policies, guidance, and investigations resulted in an "erroneous outcome" because they motivated OSU to

1

conduct its investigation in a biased manner that was itself a violation of Title IX. Third Amnd. Compl., ECF No. 36, at, *e.g.*, ¶¶ 11-20, 22-29, 162; *see also* Exhibit A at p. 1.

In an attempt to support this theory, Plaintiff previously issued third-party subpoenas to ED's Office for Civil Rights ("OCR") on September 22, 2017, and October 23, 2017. *See generally* Motion to Quash, ECF No. 61. In accordance with the Federal Rules of Civil Procedure ("FRCP"), ED objected to those subpoenas on the grounds that the subpoenas violated FRCP Rule 45 and failed to comply with the agency's *Touhy* regulations. *Id*. When Plaintiff did not withdraw the subpoenas, ED moved to quash those subpoenas on November 14, 2017. *Id*. Plaintiff subsequently withdrew the subpoenas, ED withdrew its Motion to Quash, and the Motion was denied as moot. *See* ECF Nos. 62 & 63. Plaintiff then issued the subpoena at issue here on December 27, 2017 ("the Third Subpoena"), a copy of which is attached as Exhibit B.[1]

## II. FACTS

### A. The Department of Education's *Touhy* Regulations

Requests for documents or testimony from a federal agency are commonly referred to as *Touhy* requests following the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). In accordance with that decision, ED promulgated *Touhy* regulations to "establish[] the procedures to be followed when the Department or

---

[1] In the interim, Plaintiff submitted a Freedom of Information Act ("FOIA") request to ED, dated November 17, 2017, seeking similar categories of documents as those requested in the First and Second Subpoenas. Plaintiff neither acknowledged ED's November 28, 2017, initial cost estimate for responding to the FOIA request—which was $20,097.00 for the 377.5 hours needed to conduct an initial search for the records responsive to the request, as well as $30.00 of direct costs to retrieve files from archives—nor responded to ED's invitation to narrow the FOIA request. Accordingly, ED administratively closed the FOIA request on January 3, 2018. *See* Exhibit D, Third Response, at pp. 1-2, 8; *see also generally* FOIA letter, attached as Exhibit C.

2

any employee of the Department receives a demand" for testimony or production of documents in a case where the United States is not a party. 34 C.F.R. § 8.1. The "requirements for submitting a demand for testimony or records" to ED are set forth in 34 C.F.R. § 8.3; any demand for testimony or documents in a legal proceeding "[m]ust be in writing" and "[m]ust state the nature of the requested testimony or records, why the information sought is unavailable by any other means, and the reason why the release of the information would not be contrary to an interest of [ED] or the United States." 34 C.F.R. § 8.3(a)(1) and (2). Any such request for documents "must be made on an employee who has custody of the records" and copied to ED's General Counsel. 34 C.F.R. § 8.3(c).

ED's *Touhy* regulations were promulgated in accordance with the "federal housekeeping statute," which provides that the head of an Executive department "may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business and the custody, use, and preservation of its records, papers and property." 5 U.S.C. § 301. These regulations are mandatory and cannot be dispensed with as a mere formality. *See generally Touhy*, 340 U.S. 462. Thus, while *Touhy* regulations do "not authorize withholding information from the public or limiting the availability of records to the public," 5 U.S.C. § 301, the regulations must be followed to seek and obtain approval before the information Plaintiff requests here can be released. *See generally Touhy*, 340 U.S. 462.

Upon receipt of a request for documents or testimony, 34 C.F.R. § 8.5 sets forth the procedures the agency must follow before releasing the information. ED's regulations

3

specifically require "the prior written authorization of the Secretary" before any requested documents may be released. 34 C.F.R. § 8.5(b). The regulations permit disclosure of documents only after the Secretary determines that the demand satisfies the requirements of 34 C.F.R. § 8.3 and that the disclosure (1) would be appropriate under the rules of procedure governing the matter in which the demand arises and other applicable laws, rules, and regulations; and (2) would not be contrary to an interest of the United States, which includes furthering a public interest of the Department and protecting the human and financial resources of the United States. 34 C.F.R. § 8.5(c).

### B. The Third Subpoena to the Department of Education

The Third Subpoena—issued on December 27, 2017[2]—requested production of five broad categories of documents on January 19, 2018, at 1:34 PM:

1. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015 – which [ED] has not provided to OSU – that relate to any investigation(s) [ED] conducted regarding OSU's implementation of Title IX.
2. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015 – which [ED] has not provided to OSU – that relate to any complaint [ED] received regarding OSU's implementation of Title IX.
3. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015 – which [ED] has not provided to OSU – that relate to OSU's implementation of Title IX.
4. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015 – which [ED] has not provided to OSU – that relate to OSU's Title IX policies.

---

[2] ED's Office of the General Counsel did not receive a copy of the Third Subpoena until January 2, 2018, and OCR's Cleveland Office was not served until January 8, 2018. *See* Third Response, Exhibit C, at p. 2; Third Subpoena, Exhibit B, at p. 2.

4

5. All document(s) and communication(s) created between April 4, 2011 and August 7, 2015 – which [ED] has not provided to OSU – that relate to OSU's sexual misconduct policies.

*See* Exhibit B at p. 6.

The Third Subpoena also contained "Additional Information Related to Subpoena," consisting of six bulleted paragraphs which purport to explain how the Third Subpoena complies with ED's *Touhy* regulations in an attempt to avoid the deficiencies of the first two subpoenas and Plaintiff's separate FOIA request. *Id*. at pp. 6– 7.

### C. The Department of Education's Third Response and Determination by the Acting Assistant Secretary for Civil Rights

On January 10, 2018, the Regional Director of OCR's Cleveland, Ohio, office sent a letter ("the Third Response") to Plaintiff's counsel in response to the Third Subpoena. *See* Exhibit D, attached. Noting that this was Plaintiff's third subpoena, the Third Response explained that ED's regulations authorize the release of the agency's information only after specific written authorization from the Secretary of Education; such authorization has been delegated to the Acting Assistant Secretary for Civil Rights, Candice Jackson.[3] *Id.* at p. 3. The Third Response went on to state that, under ED's regulations, Acting Assistant Secretary Jackson had determined that ED would not comply with the Third Subpoena for two main reasons: first, because "compliance with the [T]hird [S]ubpoena is not appropriate under the rules of procedure governing the matter in which the demand arises as well as other applicable laws, rules, and

---

[3] The Secretary, pursuant to her authority in 20 U.S.C. § 3472, delegated the authority in 34 C.F.R. Part 8 to the heads of each of ED's Principal Offices pursuant to Delegation EA/GEN/varied2, certified on September 4, 1992. *See* Memorandum re: Delegation of Authority dated Sept. 4, 1992, https://www2.ed.gov/about/offices/list/om/docs/delegations/fs_general_ea_varied2.pdf.

5

regulations," and second, because "production of the requested documents . . . would be contrary to interests of the Department and the United States." *Id*. at pp. 4, 7.

In brief, Acting Assistant Secretary Jackson concluded that compliance with the Third Subpoena violated not only ED's *Touhy* regulations, but also the FRCP and various federal statutes, such that no response was appropriate under the agency's *Touhy* regulations. She determined, for example, that the Third Subpoena violated FRCP Rules 26 and 45 because it was not proportionate to Plaintiff's needs, it sought privileged materials, and responding to it would impose an undue burden and expense on the agency. *Id*. at p. 4. Acting Assistant Secretary Jackson also determined that release of materials responsive to the Third Subpoena would violate the Privacy Act of 1974, as amended ("Privacy Act"), 5 U.S.C. § 552a, and the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g and 34 C.F.R. Part 99. *Id*. at p. 5.

Acting Assistant Secretary Jackson further decided that "[d]isclosure of the requested documents would not further a public interest of the Department" for several reasons, including not only the overbreadth of the requests and the corresponding burden in responding, but also because of the "chilling effect on current and future OCR enforcement activities" caused by production of "highly sensitive information gathered with the expectation that it [would] only be used for enforcement purpose." *Id*. at p. 7. As Acting Assistant Secretary Jackson summed up her decision,

> in order for OCR to ensure recipients' compliance with the Federal antidiscrimination statutes it enforces, OCR must be able to ensure not only that the information it collects during its enforcement activities is not used for unintended purposes, but that the information is not used for a purpose

6

> that would undermine or be incompatible with OCR's enforcement efforts . . . . Production of the requested documents for your client's lawsuit, and similar documents in other matters, would therefore weaken the effectiveness of OCR's enforcement actions, and such impact is disproportionate to the need for the documents in your client's private action against OSU. It is not only in the best interest of the Department, but also essential for OCR to maintain the public's trust, and it is vital that participants in OCR's enforcement actions understand the care, conscientiousness, and respect OCR has for their privacy.

*Id.* at p. 8.

Based on Acting Assistant Secretary Jackson's determination not to release documents responsive to the Third Subpoena, the Third Response requested that Plaintiff withdraw the Third Subpoena by the close of business on January 19, 2018. *Id.* at p. 9. It also invited Plaintiff's counsel to direct questions about Acting Assistant Secretary Jackson's determination to the Chief Attorney in OCR's Cleveland, Ohio, office and to contact the Chief Attorney regarding the opportunity to submit a second, narrowed FOIA request to the agency in order to "significantly reduce the search, review, and duplication fees." *Id.*

### D. Plaintiff's January 19, 2018, correspondence

Rather than reach out to the Chief Attorney or withdraw the subpoena, Plaintiff's counsel instead emailed correspondence ("January Email") to OCR's Regional Director in Cleveland, Ohio,[4] on the afternoon of January 19, 2018. *See* Exhibit A, attached. The

---

[4] The January 19, 2018, correspondence copied the OCR Regional Director in Chicago, Illinois, because Plaintiff's counsel issued essentially identical subpoenas in unrelated litigation pending in the Southern District of Indiana to which OCR had likewise replied under separate cover.

7

January Email "address[es] six issues raised in [the Third Response] in the hopes of resolving OCR's objections,[5]" *id*. at p. 2, namely issues regarding the disclosure of personally identifiable information, the scope of the requests and definitions, the disclosure of privileged documents, the lack of a court order requiring production, and the alleged impracticality of a FOIA request. *See generally id*. The January Email also informed OCR that Plaintiff intends to seek the deposition of Acting Assistant Secretary Jackson regarding her determination not to release the requested information. *Id*. at p. 4. In closing, the January Email offered to extend the response date for the Third Subpoena to January 30, 2018. *Id*.

Because ED had already made the decision that disclosing the documents requested in the Third Subpoena was not appropriate under the applicable statutes and regulations and was not in the interest of the government, ED did not produce any records in response to the Third Subpoena and did not respond to the January Email.

### III.  LAW AND ARGUMENT

It is well established that federal agency heads have discretion to restrict the testimony of or production of documents by their subordinates through properly promulgated regulations. *See, e.g., United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468-69 (1951); *Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989) ("*Touhy* is part of an unbroken line of authority which directly supports [the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's

---

[5] ED disagrees with both the characterization of the Third Response as an "objection" and that the six identified issues are the only issues raised in the Third Response.

8

instructions under valid agency regulations."); *Swett v. Schenk*, 792 F.2d 1447 (9th Cir. 1986) (a court may not compel a federal employee to testify, regardless of the agency's reasons); *State of Louisiana v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992) ("As the Supreme Court has long held, such regulations unquestionably give [federal] employees the authority, when so ordered by supervisors, to refuse to comply with a subpoena ordering disclosure of confidential files when the United States is not a party to a legal action."). Such regulations ensure that federal employees' official time is spent on federal business and that agencies remain impartial in private litigation. *See, e.g., United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir. 1981) ("The Department of Justice has a legitimate interest in regulating access to government information contained in files or obtained by its employees during the scope of their official duties.").

As explained above, ED's *Touhy* regulations promulgated under 5 U.S.C. § 301 prohibit agency employees from producing "records in response to [a subpoena] without the prior written authorization of the Secretary." 34 C.F.R. § 8.5(b). Without such written authorization, a party cannot compel compliance with a subpoena absent a separate ruling under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, that the agency's decision not to respond was arbitrary and capricious. *See, e.g., Rimmer v. Holder*,[6] 700 F.3d 246, 262-63 (6th Cir. 2012) (noting that plaintiff in a case seeking

---

[6] While the Sixth Circuit has not squarely defined the contours of the multitude of potential *Touhy* scenarios, the *Rimmer* decision implied—though arguably in dicta—that *Touhy* requests should be treated differently based on whether the request for documents or testimony arises in a federal- or state-court case, citing with apparent approval the description of *Touhy* procedures set forth in *Houston Business Journal, Incorporated v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1211-12 (D.C. Cir. 1996). *Rimmer*, 700 F.3d at 262-63. This stray citation aside, however, the *Rimmer* decision nonetheless found that

review of FOIA denial "*could* have obtained review under the APA rather than FOIA if . . . he had pursued a *Touhy* request . . . ") (emphasis added); *see also, e.g., United States v. Threet*, No. 09-20523, 2011 WL 5865076, at *1 (E.D. Mich. Nov. 22, 2011) (noting that "if [d]efendant is dissatisfied with the DEA's response to his *Touhy* request, his remedy is an action against the DEA pursuant to the Administrative Procedures [sic] Act, and not pursuant to a motion to compel."); *OhioHealth Corp. v. U.S. Dep't of Veterans Affairs*, No. 2:14-cv-292, 2014 WL 4660092, at *3 (S.D. Ohio Sept. 17, 2014) (finding that "[i]n reviewing a federal agency's decision pursuant to its promulgated *Touhy* regulations under the Administrative Procedures [sic] Act, the Court's role is 'narrow' . . . ").

Furthermore, even if ED's decision not to respond to the subpoena was specifically at issue here and was ultimately found to be arbitrary and capricious in a ruling under the APA, "the proper remedy is to remand [the] issue back to the [agency] for further investigation and explanation," rather than to compel the agency to respond. *OhioHealth Corp.*, 2014 WL 4660092, at *7 (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *Rimmer*, 700 F.3d at 263 ("absent a *Touhy* request, [plaintiff] cannot point to a final agency action that warrants APA review"); *see also United States v. Lyimo*, 574 F. App'x 667, 670 (6th Cir. 2014) (collecting cases and noting that "[t]he law of this circuit requires a defendant to follow the appropriate *Touhy* procedures and have his or her

---

APA standards apply to review of an agency's handling of a *Touhy* request, especially given that other cases cited in the decision arose from subpoenas issued from both federal and state courts. *Id.* at 263. The *Rimmer* decision relies on, for example, *In re Boeh*, 25 F.3d 761, 767 (9th Cir. 1994), which held that "an APA claim was the proper method for challenging an agency's refusal to produce information" after agency denial of a *Touhy* request arising from a federal-court issued subpoena. Thus, while ED acknowledges that it is—as the recipient of a third-party subpoena issued under the FRCP—subject to the FRCP, it disagrees that those rules in any way supersede its *Touhy* regulations.

10

demand denied [even] before questions about the constitutionality of the procedures may be entertained.").

Because ED's Acting Assistant Secretary for Civil Rights found here that "compliance with the [T]hird [S]ubpoena is not appropriate under the rules of procedure governing the matter in which the demand arises as well as other applicable laws, rules, and regulations," and that "production of the requested documents . . . would be contrary to interests of the Department and the United States," Third Resp., Exhibit D, at pp. 4; 7, ED employees are prohibited from responding to the Third Subpoena. *See* 34 C.F.R. § 8.5(c). And while the validity of that determination is not specifically at issue here, it is significant to note that the Department properly determined that complying with the Third Subpoena would contravene the Federal Rules of Civil Procedure because it seeks privileged information; it is overly broad and creates an undue burden on the agency; and it is not proportional nor relevant to Plaintiff's litigation needs.

Responding to the Third Subpoena would run afoul of numerous federal statutes implicating compelling privacy concerns of third parties who relied on the assurances of confidentiality from the agency and their educational institutions in providing extremely sensitive personal information. Responding to the Third Subpoena would require an extensive outlay of agency resources, not only in searching for the necessarily numerous responsive documents given the overbreadth of the requests, but also in complying with statutory notification requirements for disclosure of private information of third parties and redacting or otherwise de-identifying personal

11

information of those third parties. Responding to the Third Subpoena would undermine the public's trust in the agency by disclosing information third parties expected to remain private and confidential, and would create a chilling ripple effect on future investigations and enforcement. Responding to the Third Subpoena would also necessitate the production of materials that reveal ED's deliberative processes, investigative strategies, methods of analysis, and other work product, which would undermine its effectiveness and could certainly be used for improper purposes in the future. And responding to the Third Subpoena would in fact do nothing to advance Plaintiff's private litigation because it is difficult to imagine any scenario in which documents that OCR "did not provide to OSU" could ever show or even tend to show that OSU's investigation of Plaintiff was biased and a violation of Title IX.

In sum, then, responding to the Third Subpoena is certainly not in the interests of ED or the United States because it would not only be in conflict with the statutes, rules, and regulations at issue, but it would also be a burdensome, inefficient diversion of the agency's resources away from its task to fairly and vigorously enforce Title IX. Responding to such a subpoena is a needless outlay of federal time and resources that would serve only to further the interests of private litigants while exposing ED to a potential onslaught of subpoenas issued in private litigation around the country— exactly the outcome that *Touhy* and its progeny seek to avoid.

## IV. CONCLUSION

Absent the written authorization required by ED's *Touhy* regulations, Plaintiff cannot compel the agency to respond to the Third Subpoena, and therefore, it must be quashed.

          Respectfully submitted,

          BENJAMIN C. GLASSMAN
          United States Attorney

          s/Leah M. Wolfe
          LEAH M. WOLFE (0093299)
          Assistant United States Attorney
          303 Marconi Boulevard, Suite 200
          Columbus, OH 43215
          Office: (614) 469-5715
          Fax: (614) 469-5240
          E-mail: leah.wolfe@usdoj.gov

OF COUNSEL:

Vanessa Santos
Michelle Tucker
Deborah Friendly
U.S. Department of Education
Office of the General Counsel
Division of Educational Equity
400 Maryland Ave. SW, Rm. 6E236
Washington, DC 20202

**CERTIFICATE OF SERVICE**

I certify that on January 31, 2018, I filed the foregoing Motion to Quash using the CM/ECF system, which will send notice to all counsel of record.

                                                s/Leah M. Wolfe
                                                LEAH M. WOLFE (0093299)
                                                Assistant United States Attorney