UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 2:16-cv-00171 |
| v. | ) | |
| | ) | Judge Smith |
| OHIO STATE UNIVERSITY, et al., | ) | |
| | ) | Magistrate Judge Vascura |
|     Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO COMPEL UNITED STATES DEPT. OF EDUCATION'S
RESPONSE TO PLAINTIFF'S SUBPOENA**

**1.   Introduction:**

Plaintiff John Doe "(JD)" requests this Court order the United States Department of Education ("DOE") to produce the Requested Documents identified in JD's Motion to Compel ("JD's MTC").[1]  This is because, as detailed below, DOE's arguments in opposition to JD's MTC are unpersuasive.

**2.   The Requested Documents must be produced because they are critical to claims and defenses in this case.**

The Requested Documents are highly relevant to a central issue in this case.  This issue is whether Defendant The Ohio State University's ("OSU") expulsion of JD was motivated by gender bias related to pressure from DOE's Office of Civil Rights ("OCR").  DOE does not disagree factual allegations regarding DOE pressure contributed to ten district courts' decisions rejecting

---

[1] JD's MTC defines the Requested Documents as: (1) All document(s) and communication(s) created between April 4, 2011 and August 7, 2015 - which DOE neither provided to OSU nor received from OSU - that relate to any sexual misconduct investigation(s) DOE conducted regarding OSU's implementation of Title IX, and (2) All document(s) and communication(s) created between April 4, 2011 and August 7, 2015 - which DOE neither provided to OSU nor received from OSU - that relate to any sexual misconduct complaint DOE received regarding OSU's implementation of Title IX." *Doc.68,* PageId.3563-64.

1

motions to dismiss Title IX claims filed by male students like JD. *Compare, Doc.68,* p. 3565-67 (containing JD's discussion of ten district court decisions), with *Doc.69,* p. 3801-03 (containing DOE's response). Instead, DOE asks this court to ignore these court decisions because DOE alleges they are based on "unsubstantiated allegations" that do not justify DOE's production of the Requested Documents. *Doc.69,* p. 3801. DOE's argument is incorrect because these ten decisions detail why federal pressure – such as DOE's temporally connected investigation of OSU– warrants the production of the Requested Documents. *See generally, Doc.68,* p. 3565-67 (containing JD's discussion of ten district court decisions).

DOE also neglected to mention the Sixth Circuit's recent *Univ. of Miami* decision which explicitly identified "discovery" as a tool to evaluate allegations of federal pressure like the pressure likely manifested in the Requested Documents. *Doe v. Miami Univ.,* No. 17-3396, --F.3d--, 2018 WL 797451, *10 (6th Cir. Feb. 9, 2018). [2] Specifically, the Sixth Circuit identified "[d]iscovery" as a method to uncover gender bias that might exist in documents not "controlled" by plaintiff. *Id*. *Miami Univ.* did not explicitly discuss the use of subpoenas, but it strongly suggests DOE should produce the Requested Documents because DOE is the *only* party in "control" of these documents. *See, generally, Doc.68,* p. 3571, 3576-77 (discussing same).

DOE also inaccurately claimed JD raised "unfounded and inaccurate" concerns about the likelihood of gender bias evidence being contained in the Requested Documents. *Doc.69,* p.3809. This claim is incorrect because JD identified numerous legal scholars who discussed DOE pressure contributing to gender biased discipline of male students. *Doc.68,* p.3567-69 (discussing same). These scholars include female Harvard Law professors who describe:

> OCR's "pro-accuser" mandates that created a "bias for women and against men" so as to "predetermine women as victims and men as wrongdoers." *Id.,* p. 3567-68

---

[2] It should be noted, the Sixth Circuit issued *Univ. of Miami* after JD's MTC was filed but before DOE filed its response to JD's MTC.

2

>(discussing Elizabeth Bartholet, Nancy Gertner, Janet Halley & Jeannie Suk Gersen, *Fairness For All Students Under Title IX* (Aug. 21, 2017).

DOE's attempted to sidestep the legal scholars' concerns about DOE bias by claiming the production of the Requested Documents is: (a) unwarranted since the legal scholars do not explicitly identify subpoenas as a tool for obtaining gender bias evidence, and (b) unnecessary because JD can obtain gender bias evidence "without [engaging in] discovery."  *Doc.69,* p.3802.

DOE's claims lack merit because none of the scholarly publications cited by JD suggest an opposition to subpoenas.  *Doc.68,* p.3567-69.  If anything, the authors of these publications would likely support JD's Subpoena because the authors all express concerns that DOE pressure caused universities to violate male students' Title IX rights.  *Id.* [3]   In addition, DOE's allegation that the Requested Documents are unnecessary because JD can obtain gender bias evidence "without discovery" completely contradicts *Miami Univ*.  For in that decision, the Sixth Circuit stated plaintiffs should use "discovery" to obtain gender bias evidence from those that "control" such evidence.  *Miami Univ.,* 2018 WL 797451, *10.  Otherwise, plaintiffs cannot defend against subsequent motions for summary judgment filed by defendant universities like OSU.  As a result, this Court should order DOE produce the Requested Documents because DOE is the only entity in "control" of this potentially critical pieces of gender bias evidence.

---

[3] DOE makes other inaccurate arguments regarding the scholarly publications cited in JD's MTC.  For instance, DOE misinterprets Bethany A. Corbin's *Riding The Wave Or Drowning?: An Analysis Of Gender Bias And Twombly/Iqbal In Title IX Accused Student Lawsuits*, 85 Fordham L. Rev., May 2017, 2665, 2680-85.  *See generally, Doc.69,* p.3802.  In particular, DOE distorts Ms. Corbin's commentary on why courts should reject motions to dismiss without the need for additional discovery.  *Id.*  This is because Ms. Corbin's article argues discovery should not be necessary to defeat most Civ. R. 12 motions to dismiss filed by defendant universities.  *See generally,* Bethany A. Corbin's *Riding The Wave Or Drowning?: An Analysis Of Gender Bias And Twombly/Iqbal In Title IX Accused Student Lawsuits*, 85 Fordham L. Rev., May 2017.  But, Ms. Corbin suggests courts interested in requiring male plaintiffs produce more concrete evidence of gender bias should order limited discovery before ruling on defendant university's Civ. R. 12 motions to dismiss.  *Id.*

This is particularly true because the Requested Documents are essential to evaluating OSU's allegation that its expulsion of JD had nothing to do with pressure from the Obama Administration, DOE or OCR. *See e.g., Doc.52,* p.3228-29 (containing OSU's Answer denying JD's expulsion was impacted by pressure from the Obama Administration, DOE or OCR). In response, DOE alleges it would be impossible for the Requested Documents to highlight DOE's pressure because these documents "were never provided to OSU." *Doc.69,* p.3803. DOE's allegations lack merit in part because the Sixth Circuit and ten district courts suggest the Requested Documents will likely illuminate gender biased statements, goals, and/or strategies discussed during DOE's interactions with OSU.

Consequently, this Court should order the production of the Requested Documents because this Court has required non-parties produce subpoenaed documents relevant to a party's defenses. *Taylor v. Universal Auto Group I, Inc.,* No. 14–mc–50, 2015 WL 1810316 *8 (S.D.W.D.OH. Apr. 17 2015) (compelling a non-party produce documents relevant to a defendant's affirmative defenses).

2. **Producing the Requested Documents does not subject DOE to undue burden nor does it run afoul of The Privacy Act or FERPA**

DOE's "undue burden and expense" arguments[4] should be rejected in part because DOE does not dispute OCR's Acting Assistant Secretary Candice Jackson ("Jackson") <u>never</u> responded to JD's offer to narrow the scope of JD's Subpoena to the Requested Documents. *See generally, Doc.66* (containing no suggestion that Jackson personally evaluated JD's offer to narrow the scope of JD's Subpoena to the Requested Documents), *Doc.69* (same). Therefore, OCR has not satisfied its burden under FRCP 45 to establish an undue burden by "show[ing] disclosure will cause it a

---

[4] *See, Doc. 69,* p.3804-09 (containing DOE's undue burden arguments).

4

'clearly defined and serious injury.'" *In re Domestic Drywall Antitrust Litig,* 300 F.R.D. 234, 239 (E.D. 2014)(citation omitted).

Similarly, DOE's Privacy Act of 1974 ("Privacy Act") and the Family Educational Rights and Privacy Act ("FERPA") arguments lack merit. For instance, DOE alleged JD incorrectly claimed a subpoena trumps DOE's FERPA obligations to keep certain student information private. *Doc.69,* p.3806-07. But, DOE admits FERPA permits DOE "to disclose personally identifiable information ["PII"]. . . pursuant to a lawfully-issued subpoena . . . ." *Id.,* p.3807. Similarly, DOE alleges JD erroneously claimed DOE puts students on notice that PII can be disclosed in response to subpoenas. *Id.,* p.3805. However, DOE admits providing students this notice by forewarning them that DOE will produce PII as "otherwise [required] by law" - which certainly includes subpoenas. *Id.* More importantly, DOE's Privacy Act and FERPA arguments do not refute JD's assertion that the Requested Documents likely contain minimal PII since JD is not seeking documents OSU provided DOE. *Doc.68,* p.3564-65 (discussing same).

DOE also largely ignores JD's offer to allow DOE to replace students' names with mutually agreeable gender specific pseudonyms. *Id.* Instead of addressing this attempt at compromise, DOE identifies the following new examples of PII that DOE wants to keep confidential: students' addresses; social security numbers; student numbers and birth dates; biometric records; names of students' parents or family members; and/or students' mothers' maiden names (collectively referred to as "New PII"). *Doc.69,* p.3808. If DOE had raised these issues previously, DOE would have learned JD would consent to DOE redacting the New PII from DOE's initial production of the Requested Documents. Consequently, JD requests this Court require DOE's initial production of the Requested Documents occur with the redactions and gender specific pseudonyms proposed by JD.

5

### 3. <u>**DOE's legal authorities are distinguishable.**</u>

DOE's legal authorities do not support DOE's allegation that this Court lacks the power to overrule DOE's claim that it need not produce the Requested Documents.  For example, the *Santiago* decision cited by DOE does <u>*not*</u> support DOE's allegation that this Court cannot review DOE's unilateral decision to withhold the Requested Documents.   *Doc. 69,* P.3798 (quoting *Santiago v. Jamison*, No. 2:13-cv-781, 2015 WL 136038 (M.D. Fla. Jan. 9, 2015)).  This is partly because DOE neglected to mention *Santiago* quashed a subpoena only after determining the plaintiff: (a) falsely alleging he served his motion to compel on DOE, and (b) did not engage DOE in extra judicial attempts to resolve his disputes with DOE prior to filing the motion to compel.  *Santiago,* 2015 WL 136038, *2.  These factors do not exist here because: (1) JD's MTC was properly served on DOE; (2) JD's Subpoena complied with 34 C.F.R. §§8.1-8.3; (3) DOE rejected JD's extra judicial attempts to resolve their disputes; and (4) DOE stated it will not produce any of the Requested Documents unless ordered to do so by this Court.  *Compare, Doc.68,* p.3562-65 (discussing items 1-4), with *Doc.69* (not disputing items 1-4).

DOE's reliance on *Jackson* is similarly deficient because *Jackson* does not support DOE's allegation that the Administrative Procedure Act ("APA") is the only mechanism JD can use to challenge DOE's decision to withhold the Requested Documents.  *Doc.69,* p.3797 (quoting *Jackson v. Allen Indus., Inc.*, 250 F.2d 629, 630 (6th Cir.1958).  This is because *Jackson* is devoid of any suggestion that the Sixth Circuit looked to the APA to determine whether a subpoena was enforceable.  *Jackson,* 250 F.2d 629-630.  Instead, *Jackson* appears to have determined the motion to compel lacked merit because the FBI raised valid "privilege" objections and the plaintiff could

6

not establish a requisite "causal connection" to the requested documents. *Id.* Here, JD establishes a "causal connection" and DOE prohibits this Court from evaluating its "privilege" arguments because DOE refused JD's request for a privilege log. *See generally, Doc.68,* p.3565-69, 3572-73 (discussing same).

JD's MTC should also be granted because DOE does not disagree *Apollo I* rejected DOE's argument that FOIA and the APA must be utilized to resolve the dispute over the Requested Documents. *Compare, Doc.68,* p.3573 (containing JD's discussion of *In Re Apollo Group, Inc. Securities Litigation,* Case No. CV–04–2147–PHX–JAT, 2007 WL 778653, *1 (Dist. DC., Mar. 12, 2007)("Apollo I"), with *Doc.69,* p.3799 (containing OCR's discussion of Apollo I). Similarly, DOE does not dispute *Apollo I* ordered DOE produce a privilege log and subpoenaed documents dealing with "DOE's underlying work papers" related to a DOE investigation. *Id.*

Instead, DOE suggests *Apollo II* supports DOE's argument that the APA must be utilized to resolve disputes over the Requested Documents. *Doc.69,* P.3799 (containing OCR's discussion of *In re Apollo Group, Inc. Securities Litigation*, 251 F.R.D. 12, 15 (D.D.C. 2008) (*"Apollo II"*) *aff'd* on mootness grounds, 329 F. App'x 283 (D.C. Cir. 2009). In reality, *Apollo II* stated the opposite by noting:

> Apollo could, despite the DOE's arguments to the contrary, pursue the production of documents responsive to the Amended Subpoena via a Motion to Compel pursuant to Federal Rule of Civil Procedure 45(c)(2)(B) . . . . *Apollo II,* 329 F. App'x 12, 17.

In a back-up argument, DOE alleges *Apollo II* proves JD's MTC should be rejected because *Apollo II* ultimately found DOE need not produce certain documents. *Doc.69,* P.3803-04 (containing OCR's discussion of *Apollo II).* DOE's argument is clearly premature because *Apollo II* addressed three critical events which have not occurred here: (1) DOE produced some subpoenaed documents after *Apollo I*; (2) DOE provided privilege logs ordered by *Apollo I*; and

7

(3) *Apollo II* conducted fact intensive evaluations of ODE's various legal claims. *Apollo II,* 329 F. App'x 12.

DOE also incorrectly alleges *Cabral* and *Elnashar* require this court "remand" this dispute to DOE "for further investigation" if this Court finds DOE acted in an arbitrary and capricious fashion. *Doc.69,* P.3809-11 (discussing *Cabral v. U.S. Dep't of Justice*, 587 F.3d 13, 23 (1st Cir. 2009), *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1052-53 (8th Cir. 2007)). This allegation is incorrect because neither *Cabral* nor *Elnashar* remanded disputes to federal agencies. Instead, *Cabral* and *Elnashar* adjudicated subpoena disputes by conducting *in camera* reviews of disputed documents. *Cabral,* 587 F.3d 13, 23; *Elnashar,* 484 F.3d 1046, 1053.

DOE's reliance on *Cabral* is also unpersuasive because like *Apollo II,* the federal agency in *Cabral* ultimately agreed to produce documents and testimony sought in a subpoena. *Cabral,* 587 F.3d 13, 23 (discussing how the Dept. of Justice "authorized two FBI Agents . . . to provide affidavits and trial testimony, authorized . . . a deposition and trial testimony . . . disclosed certain relevant documents . . . [and provided] an affidavit filed *in camera* and under seal . . . explained how the release of undisclosed information would directly and adversely impact the FBI's investigations and violate the Privacy Act . . . .").

As a result, DOE's *Cabral* argument should be rejected because DOE refuses to engage in the document disclosures the federal agency in *Cabral* engaged in. This is especially true because *Cabral* - like the *Davis* decision cited by DOE – are distinguishable because they involved subpoenas requesting oral testimony – something not sought in JD's Subpoena. *Compare, Doc.69,* p.3809, 3811, fn.9 (discussing *Cabral,* 587 F.3d 13, 23 (1st Cir. 2009), *Id.,* p. 3811 (discussing *Davis Enters. v. U.S. EPA*, 877 F.2d 1181, 1188 (3d Cir. 1989)).[5]

---

[5] To avoid repetition, JD incorporates by reference components of JD's MTC that distinguished the following decisions previously cited by DOE because DOE does not dispute JD's distinguishing of these

8

Moreover, courts have rejected DOE's *Davis* based argument that the APA is the sole basis for litigants like JD to seek the enforcement of a subpoena. *Doc.69,* P.3810, fn.9 (containing DOE's *Davis* argument). The *Fermaintt* and *Johnson* decisions are two examples. *Fermaintt v. McWane,* No.06-5983, 2008 WL 11383665 (D.C.N.J. Dec. 17, 2008); *Johnson v. Folino,* 528 F. Supp.2d 548, 550 (E.D. Penn. 2007). *Fermaintt* determined FRCP governed a dispute regarding a subpoena and "an ancillary action under the APA [was] not necessary." *Fermaintt*, 2008 WL 11383665, *4 (distinguishing *Davis* as relating to subpoenas originating in state courts). Similarly, *Johnson* determined that since "*Davis* arose out of a state court litigation, it has no bearing on whether a separate action is necessary to review a discovery dispute arising in a federal case." *Johnson* 528 F. Supp.2d 548, 551. *Johnson* then "[a]ssum[ed] without deciding that a Rule 45 analysis govern[ed]" the FBI's objection to a subpoena. *Id.*

*Johnson* also undermines DOE's allegation that The Privacy Act necessitates the quashing of JD's Subpoena. This is because *Johnson* determined: "The Privacy Act . . . does not create a qualified discovery privilege . . . [n]or does the Act create any other kind of privilege or bar that requires a party to show actual need as a prerequisite to invoking discovery." *Id.,* 552 (quoting *Laxalt v. McClatchy,* 809 F.2d 885, 888 (D.C.Cir.1987)). Instead, *Johnson* determined that when addressing Privacy Act objections "in the course of civil litigation, [] courts must accord the proper

---

decisions: *Swett, Sparks, Boron, Rimmer, Threet, Ohio Health,* and *Lynimo. Compare, Doc.68,* PageId.3574-75 (detailing JD's rationale for why the following cases did not support DOE's arguments *Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989); *State of Louisiana v. Sparks*, 978 F.2d 226 (5th Cir. 1992); *United States v. Threet*, No. 09-20523, 2011 WL 5865076 (E.D. Mich. Nov. 22, 2011); *OhioHealth Corp. v. U.S. Dep't of Veterans Affairs*, No. 2:14-cv-292, 2014 WL 4660092 (S.D. Ohio Sept. 17, 2014); *United States v. Lyimo*, 574 F. App'x 667 (6th Cir. 2014)); *Rimmer v. Holder*, 700 F.3rd 246, 262-63 (6th Cir. 2012)), with *Doc. 69,* PageId.3797-98, 3810-11 (repeating DOE's *Swett, Sparks, Boron, Rimmer, Threet, Ohio Health,* and *Lynimo* arguments without addressing JD's distinguishing of these cases).

9

weight to the policies underlying [] statutory protections, and . . . compare them with the factors supporting discovery in a particular lawsuit." *Id.*[6]

Here, *Fermaintt, Johnson,* and distinguishing factors of DOE's legal authorities require DOE produce the Requested Documents. This is partly because DOE's reliance on *Metcalfe* is unpersuasive. *Doc. 69,* p.3798, 3809-10 (discussing *Metcalfe v. Ultimate Sys., Ltd.*, 346 F. Supp.2d 950, 954 (N.D. Ohio 2004). For, *Metcalfe* - like the *Edwards, Jackson,* and the *Houston Business Journal* decisions cited by DOE[7] - all involved state court subpoenas quashed because federal agencies had not waived sovereign immunity. *See e.g., Metcalfe,* 346 F. Supp.2d 950, 953-54 (noting that like *Edwards* and *Houston Business Journal* the federal agency in *Metcalfe* "had not waived sovereign immunity" to subpoenas served in state courts and therefore "state court orders seeking documents from the non-party federal agency cannot be enforced and shall be dismissed."); *Supra,* p.7 (discussing *Jackson*).

DOE also lacks a basis for claiming *NetJet* supports DOE's allegation that this court cannot review DOE's subjective belief that it need not produce the Requested Documents. *Doc.69,* p.3798 (discussing *NetJets Large Aircraft, Inc. v. United States*, No. 2:11-cv-1023, 2014 WL 1672588, at *10 (S.D. Ohio April 28, 2014)). This is partly because *NetJet* did not involve a subpoena but rather addressed a federal agency's objection to a discovery request. *NetJets Large Aircraft, Inc.,* 2014 WL 1672588.

---

[6] *Johnson* ultimately determined the FBI's Privacy Act arguments outweighed a habeas corpus petitioner's desire to obtain the redacted names from an FBI report because it was "unlikely that the redacted names are relevant to" the petitioner's petition. *Johnson* 528 F. Supp.2d 548, 552.

[7] *See, Doc.66,* p.3389 (containing DOE's arguments based on *Houston Bus. Journal, Inc. v. Office of Comptroller,* 86 F.3d 1208 (D.C.Cir.1996)); *Doc.69,* p.3797 (containing DOE's arguments based on *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312 (7th Cir. 1994); *Supra,* p.7 (discussing DOE's reliance on *Jackson*).

Finally, DOE incorrectly suggests *Watts* supports DOE's allegation that this Court lacks the authority under the FRCP to compel the production of the Requested Documents. *Doc.69,* P.3799 (discussing *Watts v. SEC*, 482 F.3d 501 (D.C.Cir. 2007)). This allegation lacks merit because *Watts* determined: "Courts have applied [] Rule 45 standards to document subpoenas issued to third-party agencies or agency employees in federal civil suits." *Watts,* 482 F.3d, 501, 508. *Watts* also noted "we do *not* believe the APA arbitrary and capricious standard applies when a court reviews an agency's decision not to comply with a federal court subpoena." *Id.,* 509. And *Watts* found: "an agency's Touhy regulations do not relieve district courts of the responsibility to analyze privilege or undue burden assertions under Rule 45 . . . ." *Id.*

**4.** **Conclusion**

The law and facts above disprove DOE's allegation that JD's MTC is based on "conclusory statement[s]" that are "unfounded and inaccurate." *Doc.69,* p.3809. Instead, these facts and law highlight deficiencies in DOE's arguments which include DOE's refusal to present affidavits, privilege logs, and/or documents presented by federal agencies in legal authorities cited by DOE. Therefore, JD requests this Court compel the production of the Requested Documents.

Respectfully Submitted,

/s/ Eric Rosenberg
Eric Rosenberg, Esq.
Rosenberg & Ball Co. LPA
395 North Pearl Street
Granville, Ohio 43023
Phone: 740.644.1027
Fax 866.498.0811 fax
Attorney for Plaintiff

<u>Certificate of Service</u>

      I certify that on March 6, 2018, I filed this court filing with the Clerk of Court using the CM/ECF system which will send notification of the filing to all registered parties.

<u>/s/ Eric Rosenberg</u>