IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| John Doe, : | |
| : | Case No. 2:16-cv-00171 |
| Plaintiff, : | |
| : | Judge George C. Smith |
| v. : | |
| : | Magistrate Chelsey M. Vascura |
| The Ohio State University, : | |
| : | |
| Defendant. : | |

**MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND
RESPONSES TO INTERROGATORIES**

Pursuant to Fed. R. Civ. P. 37, Plaintiff John Doe respectfully submits this Memorandum in Support of Motion to Compel Production of Documents and Responses to Interrogatories. Plaintiff seeks the following discovery from Defendant: (i) complete written responses to Plaintiff's First Request for Production of Documents and a privilege log; (ii) documents exchanged with the U.S. Department of Education and its Office of Civil Rights relating to Title IX compliance at OSU; (iii) information and documents relating to investigations at OSU into other Title IX matters of similarly situated students; (iv) documents relating to OSU's investigation and closing of its Office of Sexual Civility and Empowerment; (v) documents relating to OSU's Title IX policies and training materials; (vi) information and documents relating to pages on OSU's website relating to Title IX; and (vii) documents relating to other Title IX lawsuits brought against OSU by male students. Plaintiff also seeks the payment of expenses, including attorney's fees, for filing this motion. Fed. R. Civ. P. 37(a)(5).

A.  **BACKGROUND FACTS AND INFORMATION**

The underlying facts of this case are set forth in the Court's decision granting in part, and denying in part, Defendant's Motion to Dismiss. *See Doe v. Ohio State Univ*., 239 F. Supp.2d

1048, 1065 (S.D. Ohio 2017); (Doc. No. 50). Pending before this Court and containing additional relevant background information and facts is Plaintiff's Motion to Reconsider the dismissal order. (Doc. No. 72). This motion is fully briefed.

Because of this pending motion, which could change the scope of discovery, the parties agreed that the most efficient course was to stay discovery until the Court rules on the Motion to Reconsider. Before the agreed stay, the parties had exhausted efforts to resolve a dispute about Defendant's responses to Plaintiff's written discovery requests. The parties agreed to submit this dispute to the Court while discovery is stayed and the Motion to Reconsider pending, so that when discovery commences, the parties can move forward without further delay. (Doc. No. 86)

**B.    DISCOVERY**

On July 7, 2017, Plaintiff served Defendant with its First Set of Interrogatories and Requests for Production of Documents. (*See* Exhibits 1 and 2). Instead of responding, Defendant attempted to narrow the scope of discovery to topics it deemed relevant. The parties submitted their positions on the dispute to the Court and requested a conference. (Doc. No. 57). While awaiting the conference with the Court, Defendant submitted its interrogatory answers on September 21, 2017 (*see* Exhibit 3) and later supplemented its response to Interrogatory No. 5 on November 21, 2017 (s*ee* Exhibit 4).

The discovery conference with the Court took place on October 2, 2017. At the conference, OSU expressed willingness to resolve many of the prior disputes and appeared to abandon some of its former position on narrowly limiting discovery. The biggest issue was Plaintiff's request for "all documents concerning any investigation, evaluation, prosecution, adjudication, or appeal of a charge of sexual assault, sexual misconduct, sexual harassment or a similar offence made to OSU from August 1, 2005 to the present." Because Defendant asserted that the request was unduly burdensome because of the amount of documents, the parties agreed

that OSU would initially produce a spreadsheet containing a "statistical compilation covering only 2010 to present." (Doc. No. 60).

As the Order states, however, this statistical compilation was intended only as an initial production for Plaintiff to review and request additional documents as needed. "Defense counsel offered to compile and produce statistics for 2010 to the present. Plaintiff's counsel agreed that Defense counsel's proposal appeared to be [a] reasonable solution, but reserved the right to request more information following review of the information Defendant produces." *Id*. at pp. 1-2. Plaintiff also reserved the right to request documents relating to investigations from 2005-2010. "Plaintiff reserves the right to seek earlier years, and Defendant has not waived its objection to any such request." *Id*. at p. 2.

Following the conference, Defendant partially responded to Plaintiff's Request for Production of Documents on November 21, 2017. (*See* Exhibit 5). Defendant produced documents, including the spreadsheet referenced above, between November 21, 2017 and March 2018. Defendant has yet to provide a complete written response to Plaintiff's Request for Production of Documents. A copy of the spreadsheet is attached as Exhibit 8A.

On March 9, 2018, Plaintiff served Defendant with its Second Set of Interrogatories and Requests for Production of Documents. Defendant responded on April 11, 2018. (*See* Exhibit 6). On March 29, 2018, Plaintiff served Defendant with its First Request for Admissions, Third Set of Interrogatories, and Third Request for Production of Documents. Defendant Responded on April 17, 2018. (*See* Exhibit 7).

Following OSU's written responses to discovery and document production, disputes remained about whether Plaintiff was entitled to additional discovery relating to the topics listed in the first paragraph above. Counsel discussed these issues on the phone and exchanged formal correspondence setting forth their respective positions. A copy of the correspondence between

3

the parties relating to Plaintiff's First and Second Set of Interrogatories and Requests for Production of Documents is attached as: Exhibit 8 (and attachments A-E thereto), which is March 20, 2018 correspondence from Plaintiff to Defendant;  Exhibit 9, which is April 11, 2018 correspondence from Defendant to Plaintiff; and   Exhibit 10, which is April 18, 2018 correspondence from Plaintiff to Defendant. Attached as Exhibit 11 is April 19, 2018 correspondence from Plaintiff to Defendant addressing Defendant's responses to Plaintiff's First Request for Admissions, Third Set of Interrogatories and Third Request for Production of Documents.[1] On April 30, 2018, Defendant's counsel notified Plaintiff's counsel by e-mail that none of these discovery disputes could be resolved informally. *See* Exhibit 12.[2]

Thus, a dispute remains about the following discovery requests: First Request for Production of Document Numbers 8-12, 19-22, 24, 26-29, 36-40, Interrogatory Nos. 15-18 and Request for Admission No. 1. The final issue relates to a subpoena sent to NCHERM, which is a Title IX consulting company with whom Defendant contracts. Defendant retained NCHERM to investigate its Office of Sexual Civility and Empowerment and Natalie Spiert, who was involved in the allegations against Plaintiff and served as an adviser to the accuser. Ms. Spiert was named as a Defendant. The claims against her are part of the pending Motion to Reconsider. OSU instructed NCHERM not to produce the documents.

Plaintiff respectfully submits he is entitled to all of the discovery discussed herein and asks the Court to compel Defendant to respond. Plaintiff's counsel certifies, pursuant to Fed. R. Civ. P. 37(a)(1) that they made a good faith effort to obtain the requested discovery without court action.

---

[1] The April correspondence repeatedly references a May conference with the Court. The parties cancelled this conference by mutual agreement.
[2] Portions of Exhibit 12 unrelated to discovery are redacted pursuant to Fed. R. Evid. 408.

4

C.  ARGUMENT

1.  **Legal Background and Standard of Review**

Currently, and pending resolution of the Motion to Reconsider, this case alleges a violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"). Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). As this Court has previously explained, the principles of Title VII claims apply in interpreting Title IX, "[b]ecause the statutes share the same substantive goals and because Title IX mirrors the same substantive provisions of Title VII of the Civil Rights Act of 1964, courts interpret Title IX by looking to case law interpreting Title VII employment discrimination cases." *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1065 (S.D. Ohio 2017) (internal citations omitted).

This case, like many others attacking university disciplinary proceedings on the ground of gender bias, is based on an "erroneous outcome" theory.[3] A plaintiff bringing an erroneous outcome challenge must allege: (1) particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding; and (2) a causal connection between the flawed outcome and gender bias. *Doe v. Miami Univ.*, 882 F.3d 579, 592 (2018). Of particular relevance to this Motion, the *Miami* court further explained that allegations of gender discrimination "might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.* at 593.

Defendant, however, refuses to produce documents relating to Plaintiff's Title IX

---

[3] Because of the pending Motion to Reconsider, additional Title IX and due process claims may be reinstated.

5

erroneous outcome claims. "Determining the proper scope of discovery falls within the broad discretion of the trial court." *See Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Rule 26(b) of the Federal Rules of Civil Procedure provides the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Rule 37(a) of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to provide proper response to discovery requests.

      2.      **Complete Written Responses to Plaintiff's First Request for Production of Documents and Privilege Log**

Rule 34(b)(2) of the Federal Rules of Civil Procedure requires Defendant to provide a written response to each of the requests contained in Plaintiff's First Request for Production of Documents. Instead, Defendant only partially responded, providing responses to Document Request Numbers 8-12 and 19-34. (*See* Exhibit 5). The Court should order Defendant to provide a complete written response to assist Plaintiff in determining if all requested documents have been produced.

Additionally, Plaintiff has repeatedly asked Defendant for a privilege log. See Exhibit 8, p. 4, Exhibit 10, p. 3. Defendant repeatedly promises to produce, but never does so. Plaintiff is entitled to the privilege log and needs it to determine if there are documents being wrongfully withheld. Fed. R. Civ. P. 26(b)(5)(A). Plaintiff has been very patient with Defendant's slow responses to written discovery and the document production, which took eight months, and remains willing to work amicably to accommodate schedules and other demands of the clients. However, Plaintiff should not bear the expense of filing a motion simply to obtain a privilege log.

### 3. Requests for Documents Relating to the United States Department of Education and Compliance with Title IX

As the Court is aware from the detailed briefing relating to Plaintiff's subpoena to the U.S. Department of Education ("DOE") and its Office of Civil Rights ("OCR") (Doc. Nos. 66, 68), Plaintiff alleges that Defendant's discrimination against Plaintiff was motivated in part by pressure from the DOE and OCR, in particular because of OCR's investigation into OSU's Title IX compliance, and is attempting to obtain documents in this litigation from Plaintiff and the DOE/OCR relating to this allegation. While the Court quashed Plaintiff's subpoena, it recognized the importance of this discovery to the litigation and the fact that Plaintiff is entitled to the discovery from Defendant. "'Any documents or communications from the Department of Education to the University or from the University to the Department that may bear on the factors motivating Defendants should be in the University's possession and obtaining from Defendants." (Doc. No. 87, pp. 2-3).[4]

The related requests are contained in Plaintiff's First Request for Production of Documents, Document Request Nos. 8-12 and 27:

8. All documents concerning any investigation of OSU by the DOE concerning the handing of sexual misconduct cases or gender discrimination, including OCR Docket Nos. 15-10-6002, 15-13-2165, 15-15-2195, and 15-15-2208.

9. All documents concerning the DOE's April 11, 2011 Dear Colleague letter.

10. All documents concerning OSU's agreement with the DOE to resolve OCR Docket No. 15-10-6002.

11. All documents concerning OSU's fulfillment of the terms agreed to with DOE to resolve OCR Docket No. 15-10-6002, including the agreement to:

---

[4] Further demonstrating the relevance of the DOE/OCR documents in Title IX cases, counsel for Plaintiff issued the same subpoena to the DOE/OCR in a similar case they are litigating against the University of Cincinnati in the Western Division before Judge Dlott, who ordered the DOE/OCR to produce the requested documents. *See Gischel v. University of Cincinnati, et al.*, Case No. 1:17-cv-00475, Doc. No. 28.

7

    a. Appoint, and publicize the appointment of, a Title IX Coordinator and Deputy Title IX Coordinators;

    b. Create a Title IX webpage;

    c. Establish a centralized Office of University Compliance and Integrity;

    d. Create an OSU-wide Title IX notice of nondiscrimination;

    e. Add links to the Student Conduct website to access information about sexual harassment and sexual assault;

    f. Form a sexual violence consultation team;

    g. Increase Title IX training OSU-wide;

    h. Create a system of cooperation with OSU police;

    i. Demonstrate responsive and appropriate actions taken against students, faculty and staff who violate Title IX as it relates to sexual harassment and sexual violence; and

    j. Address the sexually hostile environment that OSU alleged existed in the OSU Marching Band by issuing a statement to OSU.

12. All status reports submitted to DOE.

27. All documents concerning the University's efforts to comply with the provisions of Title IX since 2010.

(Exhibit 2). Defendant's objections to the production of these documents ranged from the request being irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly burdensome, not proportionate to the needs of the case, vague, indecipherable, ambiguous, and unintelligible. (*See* Exhibit 5)

Defendant asserts that it "has produced or made available what it believes are all relevant documents related to its interactions with DOE/OCR (Per RFPD nos 8-12 and 27. The produced or made available OCR documents are those documents produced by OSU in the *Waters v. Drake* case." *See*, Ex. 9, p. 1, ¶ 1. However, for the reasons stated on page 1-2 of Exhibit 8, Plaintiff believes in good faith that Defendant's production is not complete and it has not produced all

8

relevant documents. Defendant has refused to supplement its response.

As the Court previously held (Doc. No. 87), discovery into the DOE's OCR investigation at OSU are relevant and discoverable. Additionally, Defendant's efforts to comply with and response to pressure from OCR are relevant and discoverable. Therefore, the requests are neither irrelevant, overly broad, not reasonably calculated to lead to the discovery of admissible evidence, unproportionate to the needs of the case, vague, indecipherable, ambiguous, and unintelligible. Regarding the proportionately argument, Defendant was expelled and permanently branded a sexual offender. He has had his degree diminished and career path completely uprooted as a result of Defendant's actions. These requests are not disproportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Accordingly, Plaintiff requests the Court order Defendant to fully respond to Document Request Nos. 8-12 and 27

  **4. Requests For Information On Other Title IX Investigations Contained in the Spreadsheet and of Similarly Situated Students**

The parties also disagree about the extent of discovery into other Title IX investigations relating to similarly situated students at OSU. Defendant's position is that it is only required to produce the spreadsheet with statistical information about other Title IX matters that it produced in response to Plaintiff's First Document Request Numbers 28, 29. Following production of the spreadsheet, Plaintiff requested Defendant produce all documents in Defendant's possession and control relating to the twenty female students identified in the spreadsheet. *See* Exhibit 8, p. 2-3 and Exhibit B thereto.

Additionally, Plaintiff requested Defendant produce all documents related to seven cases identified in the spreadsheet involving discipline similar to that imposed on Plaintiff, including (i) 2013138901; (ii) 2013207501; (iii) 2013230601; (iv) 2014000401; (v) 2014032801; (vi) 2014073403; and (vii) 2014125601. Plaintiff also requested all documents relating to OSU's "N/A"

charging decision and/or "not in violation" findings in the following eight files identified in OSU's spreadsheet in *Exhibit 8A*: (i) 2013179301; (ii) 2013217503; (iii) 2014073403; (iv) 2014155101; and (v) 2013159002; (vi) 2014156401; (vii) 2013165602; and (viii) 2014029503. *Id*. Finally, Plaintiff requested Defendant supplement the spreadsheet to provide information about whether the matter was appealed and, if so, the outcome. *Id.*

Defendant's response was that it would only produce the spreadsheet and that the Court had already ruled that it was not required to do so. "It is OSU's opinion that this issue has already been addressed with the Court." *See* Exhibit 9, ¶ 2. Defendant's position, however, finds no support in the actual Court order, which recognizes the production of the spreadsheet was a first step to assist in limiting the production in response to Defendant's position that the original requests were overly burdensome. (Doc. No. 60)

The other relevant discovery requests from are:

Request for Admission No. 1, which Defendant objected to without responding.

1. Admit some females in OSUs Spreadsheet in Exhibit A were alleged to have violated at least one of the four Policies in Exhibit B but OSU did not charge these females with violating said Polic(ies).

Plaintiff's Third Set, Interrogatory No. 15-18, which Defendant refused to respond.

15. Identify all female student(s) and/or female employee(s) alleged to have violated any of the four Policies identified in Exhibit B.

16. For each female identified in Interrogatory No. 15, identify all person(s) involved in deciding whether to charge these female(s) with allegedly violating any of the four Policies identified in Exhibit B.

17. For each female student identified in Interrogatory No. 15, identify all person(s) involved in adjudicating any charge that these females violated any of the four Policies identified in Exhibit B.

18. For each female student identified in Interrogatory No. 15, identify all academic sanctions and/or employment related discipline imposed for alleged violations of any of the four Policies identified in Exhibit B.

(*See* Exhibit 7)

As a general starting principle in evaluating these requests, the "Federal Rules of Civil Procedure authorize extremely broad discovery." *Ward v. American Pizza Co.*, 279 F.R.D. 451, 458 (S.D. Ohio Mar. 22, 2012) (*citing United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 657 (6th Cir. 1976), cert. denied 430 U.S. 945 (1977). "Any matter that is relevant, in the sense that it reasonably may lead to the discovery of admissible evidence, and is not privileged, can be discovered. The concept of relevant during discovery is necessarily broader than at trial." *Id*. (c*iting Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-01 (6th Cir. 1970)).

### a. The Information Sought Is Within The Scope Of Discovery Commonly Ordered In Civil Rights

Plaintiff can establish his claim through either direct or circumstantial evidence and, therefore, is entitled to the requested discovery. "Rarely can discriminatory intent be ascertained through direct evidence because rarely is such evidence available. This is the reason for the *McDonnell Douglas-Burdine* burden of proof mechanism, allowing a plaintiff to prove its case through circumstantial evidence. *Kline v. TVA*, 128 F.3d 337, 348 (6th Cir. 1997). As in Title VII cases, Plaintiff is entitled to discover information about the treatment of comparable students in order to establish his claims. *See, e.g. Miller v. FedEx Corp.*, 186 F.R.D. 376, 383 (W.D. Tenn. 1999) ("In this Title VII disparate treatment case, information concerning the treatment of comparable employees is doubtlessly relevant to plaintiff's claim that she received harsher discipline on account of her race.") Plaintiff has reasonably limited his requests to seek additional information about the other matters that are most likely to serve as comparable to his situation. He is entitled to this discovery.

The Sixth Circuit's recent decision in *Doe v. Miami University*, 882 F.3d 579 (6th Cir. 2018) supports Plaintiff's position that he is entitled to this discovery, in particular if the Court grants

11

Plaintiff's Motion to Reconsider. For example, Plaintiff may be able to establish discrimination by showing that Defendant failed to take action against females who violated their sexual misconduct policies under circumstances where they took action against Plaintiff. *Id.* at 590.

The recent *Doe v. Marymount Univ.* decision highlights Plaintiff's need to access the documents and/or audio recordings related to sexual misconduct disciplinary proceedings that involved the university employees involved in John Doe's discipline. *Doe v. Marymount Univ.*, Case No. 1:17-cv-401-TSE-MSN, 2018 WL 1352158 (E.D. Va. Mar. 14, 2018). In that case, a district court refused to dismiss a Title IX complaint in part because plaintiff's adjudicator manifest gender bias behavior in a sexual assault investigation that occurred after the adjudicator found plaintiff engaged in sexual misconduct. *Id.,* *9. In this subsequent investigation, the adjudicator investigated a male student's allegation that "a female student of touching his genitals without his consent." *Id.* The adjudicator asked the male student if he was "aroused by this unwanted touching." *Id.* And, the district court found this question reveled the adjudicator's "decision-making was infected with impermissible gender bias, namely [adjudicator's] discriminatory view that males will always enjoy sexual contact even when that contact is not consensual." *Id.*

### b.     The Narrowed Requests Are Not Unduly Burdensome

Although the spreadsheet was not the easiest to interpret, Plaintiff made a good faith effort to narrow its request to those matters on the spreadsheet involving comparable students and situations. Plaintiff's efforts eliminate Defendant's burdensome objections. Additionally, the document requests and interrogatories propounded by Plaintiff are similar to the discovery sought by the Department of Education, Office of Civil Rights ("OCR"), in conducting investigations into whether schools have violated Title IX by failing to promptly and equitably respond to complaints of sexual misconduct. Since Defendant has been involved in several OCR

12

investigations, it should be able to easily produce the documents. Thus, complying with the Plaintiff's discovery requests will not be burdensome.

    c. **The Protective Order Addresses Confidentiality and FERPA Concerns**

Plaintiff is not entirely sure of Defendant's objections to the production, other than its desire to narrowly limit discovery. However, any suggestion from Defendant that the discovery sought contains sensitive or confidential material protected from disclosure by FERPA or otherwise is not well taken. *See In re TJX Cos.,* No. 07-1853-KHV, 2008 U.S. Dist. LEXIS 46365, at *8-9 (D. Kan. June 12, 2008) ("As to plaintiffs' objection that the information sought may invade their privacy, this reason by itself is insufficient to make the discovery objectionable. Since there has been a protective order entered in this case . . . this type of information could be designated as 'confidential' and produced pursuant to the protective order.").

For all of these reasons, Plaintiff is entitled to the requested files identified above from OSU, supplemental information in the spreadsheet about appeals, and complete responses to Request for Admission No. 1 and Interrogatory Nos. 15-18.

 5. **Documents Relating to OSU's Investigation of its Office of Sexual Civility and Empowerment**

Before Defendant publicly announced the temporary suspension and then eventual closing of its Office of Sexual Civility and Empowerment unit and investigation into gender-biased actions of Natalie Spiert, Plaintiff first learned of the investigation when NCHERM responded to a subpoena Plaintiff issued in this case. (*See* Exhibit 8C). Counsel for Defendant instructed NCHERM to withhold documents relating to the investigation because it was irrelevant and protected by the attorney-client privilege. (*See* Exhibit 8D). Because Defendant had not produced documents relating to the investigation and because of its instruction to NCHERM, Plaintiff sent

13

the following requests for discovery into the investigation in its Third Set of Interrogatories and Requests for Production of Documents:

> 36. All communication(s) and document(s) relating to the 2017 analysis of the OSU Office of Sexual Civility and Empowerment addressed in Christina L. Corl's October 16, 2017 letter in Exhibit A.
>
> 37. All communication(s) and document(s) relating to your creation of OSU's Office of Sexual Civility and Empowerment.
>
> 38. All communication(s) and document(s) relating to any training provided to your employees and/or agents associated with OSU's Office of Sexual Civility and Empowerment.

*See* Exhibit 7.[5]

In the March 20th correspondence to defense counsel, Plaintiff asked Defendant to lift its objections and allow production of the documents because they are neither privileged nor irrelevant. (*See* Exhibit 8, pp. 3-4). Plaintiff refused, providing no further explanation for its objections or position, but confirming that the majority of the correspondence and documents at issue did not involve attorneys. (*See* Exhibit 9, p. 2, ¶ 4)

On April 18th, Plaintiff again asked Defendant to reconsider, providing the newspaper articles attached to that letter as support that the investigation was relevant. (*See* Exhibit 10) Plaintiff made a third request on April 19th. (*See* Exhibit 11, p. 2). Nonetheless, OSU continues to assert that the investigation was privileged and irrelevant.

Recent publicity regarding the closing of OSU's Office of Sexual Civility and Empowerment and termination of Ms. Spiert further contradict Defendant's position that the investigation is not relevant and is privileged. For instance, in a June 19, 2018 article published by the Lantern entitled "Ohio State shuts down its Sexual Civility and Empowerment unit," it was

---

[5] These discovery requests were served before Plaintiff had knowledge of the suspension and closing of the Office of Sexual Civility and Empowerment or of the involvement of another law firm in the investigation. However, Plaintiff asks the Court to address the full investigation in its ruling to avoid future discovery issues.

14

reported: (1) the law firm of Cozen O'Connor conducted an additional investigation and is working with the university to develop a new student program and suggest enhancements to its compliance with the laws, suggesting the legal advice is not coming from NCHERM; (2) there was a pattern of lying from the Office of Sexual Civility and Empowerment; (3) Spiert expressed her gender-biased views towards males to coaches in the athletic department by telling them after a training session she knew they would "go home and beat their wives,", and (4) that "SCE told survivors that they should embellish their stories to receive justice or legal protection." *See* Exhibit 13.

Similarly, the article from the Columbus Dispatch on the same day entitled "Ohio State closes sexual-assault center, fires 4 after complaints" confirms that "SCE advocates have written survivor conduct hearing and other legal documents, and have told survivors they need to embellish their stories because 'their real experience wasn't serious enough' to receive justice or legal protection." *See* Exhibit 14. This is exactly the type of conduct that Plaintiff alleged happened in his case. Indeed, this Court noted in its ruling on the motion to dismiss that Defendant allowing Jane Doe to embellish her claims in the midst of the process and despite evidence of a long-term relationship were suspect. *Doe v. OSU*, 239 F. Supp. 3d at 1072. Thus, the information is relevant.

Moreover, these types of investigations are not privileged. NCHERM is a consulting group that also provides legal services. *See* https://www.ncherm.org/explore/about-the-ncherm-group/our-mission-story/ (last accessed July 27, 2018). Simply because an attorney from NCHERM may have conducted the investigation or reported the results of the investigation to an in-house attorney does not make the investigation or all documents related thereto privileged. Moreover, the fact that Defendant has disclosed documents relating to the investigation to the media in response to FOIA requests demonstrates that at least some of the documents are not privileged. Defendant must either produce the documents or provide proof to meet its burden of demonstrating that the investigation was privileged.

15

### 6. Documents relating to OSU's Title IX Policies and Training Materials

Defendant produced some, but not all of the documents relating to its Title IX policies and training materials. These documents were requested in the following Request for Production of Documents:

19. The University's policies, procedures, rules, and regulations concerning sexual assault that were in effect during the following school years: (a) 2010-2011; (b) 2011-2012; (c) 2012-2013; (d) 2013-2014; (e) 2014-2015; (f) 2015-16; and (g) 2016-17.

20. All documents concerning any proposed revisions made or not made to the OSU's policies, procedures, rules, and regulations concerning sexual assault during the years 2010 to date.

24. All documents concerning the training or guidance given to any OSU employee or student who was involved in any way in the investigation, evaluation, prosecution, adjudication, or appeal of the charge against John Doe.

26. All documents concerning the operation and conduct of the University Conduct Board or the training of its members for the following school years: (a) 2010-2011; (b) 2011-2012; (c) 2012-2013; (d) 2013-2014; (e) 2014-2015; (f) 2015-16; and (g) 2016-17.

27. All documents concerning the University's efforts to comply with the provisions of Title IX since 2010.

28. All documents concerning training or guidance given to any OSU employee or student concerning Title IX, sexual misconduct, sexual violence, sexual harassment or consent since 2010.

Plaintiff asked Defendant to supplement and fully respond, providing all requested policies and training materials, as well as documents relating thereto, such as e-mails, correspondence, committee meeting minutes, meeting agendas, or information provided to individuals involved in the preparation of the documents. (*See* Exhibit 8, p. 3). According to its correspondence, Defendant looked into the "scope" of producing the requested documents, but decided not to produce. (*See* Exhibit 9, pp. 1-2, ¶ 3; and Exhibit 12).

Plaintiff is not precisely sure why Defendant will not produce because the requested documents are clearly relevant, in particular considering recent publicity about Spiert, who Plaintiff

16

alleges was a key discriminator against him, engaging in gender-biased training to the athletic department. It is likely that if Ms. Spiert was responsible for providing this training to the athletic department, then she provided to many others at OSU, including those involved in adjudicating Plaintiff's claims. In addition to discovery relating to the extent of Ms. Spiert's gender bias, the documents are generally relevant and discoverable here as they relate to allegations that OSU discriminated against Plaintiff in response to pressure from the OCR and DOE and by training its hearing panel members in a gender-biased fashion and that it adopted discriminatory policies and procedures in response to pressure from OCR.

Plaintiff respectfully moves this Court to compel Defendant to fully respond to Request for Production Nos. 19-20, 24-28.

### 7. Documents from OSU's Website

Document Request Numbers 21 and 22 seek information about information on OSU's Office of Sexual Civility and Empowerment website, as follows:

21. A copy of OSU's Office of Student Life's Sexual Civility and Employment website representing that "1/4 college women report surviving rape or attempted rape at some point in their lifetime" and all documents to support this assertion.

22. A copy of OSU's Office of Student Life's Sexual Civility and Employment website representing that "1 out of 6 American women has been the victim of attempted or complete rape . . ." and all documents to support this assertion.

Defendant has refused to produce the requested documents. *See Exhibit H, p. 4, I, p. 3, ¶ 5 and J, p. 3*. Again, these documents are relevant and discoverable and Defendant should be ordered to respond fully to Document Request Nos. 21 and 22.

### 8. Documents from other Title IX lawsuits filed by males against OSU

In his Third Request for Production of Documents, Plaintiff requested all documents produced from OSU to the Plaintiff in two other similar cases in the Southern District of Ohio: (1) *John Doe v. The Ohio State University, et al.*, No. 2:15-cv-02830; and (2) *Waters v. Drake, et al.*,

17

No. 2:14-cv-01704. As both cases have similar allegations, Plaintiff asserts that the productions likely contain relevant information that can be produced pursuant to the protective order. Plaintiff disagrees saying the documents are irrelevant and the requests unduly burdensome, overly broad, and disproportionate. *See* Exhibit 7. However, the document exchange in those cases more likely than not happened electronically. Defendant can simply forward the production. Because the parties cannot agree on this issue, it is respectfully submitted to the Court for decision on whether Defendant is required to produce the documents requested in Document Request Nos. 39 and 40.

### D.     CONCLUSION

The Court should grant the Motion to Compel and require Defendant to provide: (i) complete written responses to Plaintiff's First Request for Production of Documents and a privilege log; (ii) documents exchanged with the U.S. Department of Education and its Office of Civil Rights relating to Title IX compliance at OSU; (iii) information and documents relating to investigations at OSU into other Title IX matters of similarly situated students; (iv) documents relating to OSU's investigation and closing of its Office of Sexual Civility and Empowerment; (v) documents relating to OSU's Title IX policies and training materials; (vi) information and documents relating to pages on OSU's website relating to Title IX; and (vii) documents relating to other Title IX lawsuits brought against OSU by male students. Plaintiff also seeks the payment of expenses, including attorney's fees, for filing this motion. Fed. R. Civ. P. 37(a)(5).

Respectfully submitted,

/s/ Tracy L. Turner
TRACY L. TURNER, Of Counsel (0069927)
ERIC J. ROSENBERG  (0069958)
Rosenberg & Ball Co., LPA
395 North Pearl Street
Granville, Ohio  43023
Telephone:  (740) 644-1027
Facsimile:  (866) 498-0811
ericrosenberg@rosenbergball.com
tturner@rosenbergball.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2018, I filed the foregoing with the Clerk of Court, who will send notification to all counsel via the Court's electronic filing system.

/s/ Tracy L. Turner
Tracy L. Turner