# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JOHN DOE,

    Plaintiff,

-v-

    Case No.: 2:16-cv-171
    JUDGE GEORGE C. SMITH
    Magistrate Judge Vascura

THE OHIO STATE UNIVERSITY, *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff John Doe's Motion to Reconsider this Court's March 10, 2017 Opinion and Order granting in part and denying in party Defendants' Motion to Dismiss. (*See* Doc. 72). Defendants have responded in opposition and Plaintiff has replied. (Docs. 83 and 84). The matter is now ripe for review. For the reasons that follow, Plaintiff's Motion for Reconsideration is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

The full background of this case is set forth in detail in the Court's March 10, 2017 Opinion and Order. (*See* Doc. 50). For purposes of this Motion, the Court will briefly summarize the facts and procedural history of the case. Plaintiff John Doe was a student at The Ohio State University ("OSU") and also worked as an RN at OSU's Wexner Medical Center ("OSUWMC"). John Doe initially met Jane Doe in 2012, when she was brought in to OSUWMC. The couple dated and were involved in a sexual relationship through 2014. Seven months after the couple's last encounter, Jane Doe filed a complaint with OSUWMC alleging

that John Doe had sexually assaulted her on or about November 20, 2014. (Doc. 36, Am. Compl. at ¶ 69).

As a result of the Complaint filed, an investigation was conducted and a hearing was held. John Doe was found to have violated OSU's Code of Student Conduct Sections 3335-23-04(C), (C1), (B1) & (C2); and (b) and was permanently dismissed from OSU and barred from ever being present on any OSU campus or property in the future. John Doe was also forced to resign from his position at OSUWMC. John Doe's subsequent appeals were unsuccessful.

Plaintiff then initiated this case against Defendants OSU, Javaune Adams-Gaston, Kelly B. Smith, J.D., Matthew Page, and Natalie Spiert, (collectively "Individual Defendants"), on February 24, 2016, seeking declaratory judgment and damages on his claims for violations of Title IX, including hostile environment sexual harassment and/or discrimination, deliberate indifference, and erroneous outcome; violation of the procedural and substantive component of the Due Process Clause of the Fourteenth Amendment, as well as violation of the equal protection clause of the Fourteenth Amendment. Plaintiff has filed three amended complaints. (*See* Docs. 3, 20, and 36).

Defendants moved to dismiss Plaintiff's claims against them. This Court granted in part and denied in part Defendants' Motion to Dismiss. Only Plaintiff's claim for erroneous outcome in violation of Title IX against Defendant OSU remains pending. All of Plaintiff's other claims were dismissed.

## II. STANDARD OF REVIEW

Plaintiff John Doe moves this Court for reconsideration of its March 10, 2017 Opinion and Order in light of the United States Court of Appeals for the Sixth Circuit's decision in *Doe v.*

*Miami Univ.*, 882 F.3d 579 (6th Cir. 2018).  Plaintiff does not provide any basis or rule of law as grounds for reconsideration of the decision, just generally argues for reconsideration.

As a general principle, motions for reconsideration are granted if the moving party demonstrates: (1) a clear error of law; (2) newly discovered evidence that was not previously available to the parties; or (3) an intervening change in controlling law.  *GenCorp., Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999).  Motions for reconsideration do not allow the losing party to "repeat arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier."  *Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.,* 899 F.2d 119, 123 (1st Cir. 1990); *see also Am. Marietta Corp. v. Essroc Cement Corp.*, Case No. 01-3752, 59 Fed. Appx. 668, 2003 U.S. App. Lexis 3211, at *9 (6th Cir. Feb. 19, 2003) (motion for reconsideration "should not be used to re-litigate issues previously considered").

Interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims."  Fed. R. Civ. P. 54(b).  "District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."  *Harrington v. Ohio Wesleyan Univ.*, No. 2:05-CV-249, 2008 WL 163614, at *1 (S.D. Ohio Jan. 16, 2008) (Holschuh, J.) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 959 (6th Cir. 2004)).  "The Court has 'significant discretion' in considering a motion to reconsider an interlocutory order."  *Harrington*, 2008 WL 163614, at *2 (quoting *Rodriguez*, 89 Fed. App'x at 959 n. 7).

Typically, however, courts will reconsider previous interlocutory orders only "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice."  *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com,*

*L.P.*, 590 F.3d 381, 389 (6th Cir. 2009).  "Generally, a manifest injustice or a clear error of law requires unique circumstances, such as injunctive relief scenarios or superseding factual scenarios."  *McWhorter v. ELSEA, Inc.*, No. 2:00CV473, 2006 WL 3483964, at *2 (S.D. Ohio Nov. 30, 2006) (Kemp, M.J.).  Motions for reconsideration are not intended to be utilized to re-litigate issues previously considered.  *Macdermid Inc. v. Electrochemicals Inc.,* Nos. 96-3995, 96-4072, 142 F.3d 435 (Table), 1998 WL 165137, * 6 n. 7 (6th Cir. 1998).

### III.  DISCUSSION

Plaintiff John Doe moves for reconsideration of this Court's March 10, 2017 Opinion and Order dismissing his Title IX selective enforcement and deliberate indifference claims and the Section 1983 due process and equal protection claims in light of the United States Court of Appeals for the Sixth Circuit opinion in *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018). Defendants oppose Plaintiff's Motion.  The Court will consider the arguments in turn.

**A.     Title IX Claims**

Plaintiff seeks reconsideration of this Court's Opinion and Order dismissing his Title IX causes of action for selective enforcement and deliberate indifference.  Plaintiff's Title IX claim for erroneous outcome remains pending, therefore the Court need not consider it and Plaintiff does not seek reconsideration of the hostile work environment sexual harassment and/or discrimination claim.

As set forth in detail in the Court's March 10, 2017 Opinion and Order, Title IX of the Education Amendments of 1972 is a federal statute designed to prevent sexual discrimination and harassment in educational institutions receiving federal funding.  "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline."  *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).

4

### 1. Selective Enforcement Claim

Although Plaintiff did not specifically plead a selective enforcement claim, the Court's Opinion and Order did contain a brief footnote analyzing a potential selective enforcement claim. In that footnote, the Court stated:

> To the extent Plaintiff is alleging a claim of selective enforcement pursuant to Title IX, that claim fails. "To prevail on a 'selective enforcement' claim, the plaintiff must show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Cummins*, 662 F. App'x at 452 (citations omitted). Plaintiff, here, has failed to assert any allegations that a female student was not disciplined by OSU after a complaint was filed for violation of the Code of Conduct similar to the allegations made against Plaintiff in this case. Plaintiff's allegations that Jane Doe was treated more favorably during the disciplinary action against him are insufficient to maintain a selective enforcement claim because Jane Doe was not similarly situated to Plaintiff. *See Doe v. Case Western Reserve Univ.*, No. 1:14-CV-2044, 2015 WL 5522001, at *6 (N.D. Ohio Sept. 16, 2015) ("Jane Roe, the complainant against Plaintiff in the disciplinary proceedings, is not a counterpart for the purposes of a selective enforcement claim." (citation omitted)). To state a selective enforcement claim, a plaintiff must "identif[y] . . . a comparator of the opposite sex who was treated more favorably by the educational institution *when facing similar disciplinary charges*." *Id.* (citing *Yusuf*, 35 F.3d at 716) (emphasis added). Plaintiff's conclusory allegations are therefore insufficient to maintain a claim for selective enforcement under Title IX.

(Doc. 50, March 10, 2017 Opinion and Order at 19).

Plaintiff now asks the Court to reconsider that decision in light of the holding of the Sixth Circuit in *Miami Univ.* in the deliberate-indifference context. The *Miami Univ.* court held:

> The district court was incorrect to suggest that John needed to have made a formal complaint about Jane in order to plead a deliberate-indifference claim. We require only that "the funding recipient had actual knowledge of the sexual harassment," and not that the plaintiff followed a formal procedure to put the funding recipient on notice. *Patterson*, 551 F.3d at 445.

*Miami Univ.*, 882 F.3d at 591.

Defendants argue that Plaintiff failed to bring a claim for selective enforcement and cannot do so now through briefing. Defendants further argue that like the Plaintiff in *Miami*

*Univ.*, he has forfeited his right to bring such a claim. Additionally, Defendants argue Plaintiff should not be allowed to maintain a claim for selective enforcement because it was not pled and would be time barred.

This Court did find that Plaintiff had alleged some facts to suggest he was bringing a selective enforcement claim and thus properly considered that as a potential claim. Plaintiff has alleged that "Jane Doe consented to and/or initiated all relevant physical contact with John Doe when she knew or should known John Doe lacked the capacity to consent because he was incapacitated by alcohol." (Doc. 36, Am. Compl. ¶ 10). Plaintiff further alleges that "John Doe and Jane Doe were similarly situated in part because they were both students at OSU who consumed alcohol prior to engaging in physical contact with another student who consumed alcohol." (*Id.* at ¶ 111).

As set forth above, to prevail on a selective enforcement claim, a plaintiff must establish that a "similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Cummins*, 662 F. App'x at 452. Although the Sixth Circuit's decision in *Miami Univ.* suggests that the Court can consider Jane Doe a similarly-situated member of the opposite sex and that John Doe did not have to file a formal complaint against her to be similarly situated, this discussion is still in the context of deliberate indifference and not selective enforcement. In *Miami*, the Sixth Circuit did not analyze the selective enforcement claim because plaintiff had not pled that claim. Therefore, the Court does not find that there has been a change in controlling law regarding selective enforcement claims to justify reconsideration of dismissal of that claim.

## 2. Deliberate Indifference

Plaintiff seeks reconsideration of this Court's dismissal of his Title IX deliberate indifference claim. Plaintiff again relies on the analysis of the Sixth Circuit in *Miami Univ.* as set forth above and argues that Defendants had knowledge that Jane Doe had sex with Plaintiff when he was too intoxicated to consent but took no action against her. (Doc. 72 at 3). Defendants argue that Plaintiff still cannot maintain a claim for deliberate indifference because he has not alleged "harassment that is so severe, pervasive, and objectively offensive that it bars the victim's access to an educational opportunity or benefit." *Miami Univ.*, 882 F.3d at 590 (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999)). Defendants further assert that like the Plaintiff in *Miami Univ.*, Plaintiff here cannot establish that he was sexually harassed in a "severe, extensive and pervasive" manner as he only alleges that Jane Doe had sex with him when he was too intoxicated to consent. (Doc. 83 at 5).

Plaintiff's allegations and claim of deliberate indifference are similar to those of the plaintiff in *Miami Univ.* and should be dismissed for the same reasoning. The Sixth Circuit found that the plaintiff in *Miami Univ.* had alleged one incident of non-consensual kissing which does not rise to the level of "sexual harassment [that is] so severe, pervasive, and objectively offensive." Plaintiff has not alleged that he complained to OSU that he was being sexually harassed, nor is there any allegation that OSU ignored his complaints of sexual harassment. As this Court previously held, actual notice of the alleged discrimination is an essential element of a deliberate indifference claim, therefore, Plaintiff's claim for deliberate indifference fails. *See Gebser*, 524 U.S. at 290; *see also, Williams ex rel Hart v. Paint Valley Local Sch. Dist.*, 400 F. 3d 360, 366 (6th Cir. 2005).

**B.     Section 1983 Claims**

Plaintiff brought claims pursuant to 42 U.S.C. § 1983 for violations of both procedural and substantive due process and equal protection. To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived plaintiff of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360–61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff seeks reconsideration based on the Sixth Circuit's discussion of the deprivation of a constitutional guarantee element:

> 'As an initial matter, we note that the Supreme Court never has held that the interest in continued education at a public university constitutes a fundamental property or liberty interest that finds refuge in the substantive protections of the Due Process Clause.' *Martinson v. Regents of Univ. of Mich.*, 562 F. App'x 365, 375 (6th Cir. 2014). '[O]ur own precedent suggests that the opposite is true,' although this court has not definitively decided the issue. *Id*. A consensus on this issue does not appear to have emerged among our sister circuits either. *See, e.g., Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008) (holding that a suspension from a public university is not a deprivation of constitutional property); *Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 518-19 (4th Cir. 2005) (assuming, without deciding, that a student had 'a property interest in continued enrollment' in a master's program 'that is protected by the Due Process Clause').

*Miami Univ.*, 882 F.3d at 598. The Sixth Circuit in *Miami Univ.* ultimately concluded that Plaintiff's suspension "implicates a constitutionally protected interest" and then stated that "the question remains what process is due." *Id*. at 559–600. Plaintiff seeks reconsideration of this Court's finding that "Plaintiff's interest in continuing his education is not, as a matter of law, a fundamental right protected by due process." (Doc. 50 at 35-37). However, the Court need not reconsider its entire Opinion and Order. Despite the initial finding, the Court provided alternative analysis of both of Plaintiff's procedural and substantive due process claims assuming that Plaintiff was deprived a fundamental right.

1. **Substantive Due Process**

In the alternative analysis, this Court assumed that John Doe's right to continue his education was a fundamental right protected by substantive due process, but then concluded that Plaintiff's allegations against the individual defendants did not meet the "shocks the conscience" test, even when all inferences were drawn in Plaintiff's favor.

The Sixth Circuit in *Miami Univ.* discussed:

> 'Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest.' *Valot*, 107 F.3d at 1228. Here, the defendants' imposition of sanctions on John is rationally related to Miami University's legitimate interest in investigating alleged violations of its student code of conduct and disciplining those found responsible. Consequently, we affirm the district court's grant of the defendants' motion to dismiss with respect to John's § 1983 substantive-due-process claim.

*Miami Univ.*, 882, F.3d at 599.

Nothing in the *Miami Univ.* holding changes the law to justify this Court's reversal of the dismissal of this claim. Like Miami University, Defendants' imposition of sanctions was rationally related to OSU's legitimate interest in investigating alleged violations of student code of conduct and disciplining those found responsible.

2. **Procedural Due Process**

Plaintiff also seeks reconsideration of the dismissal of his § 1983 claim for violation of his procedural due process rights. To establish a procedural due process violation, a plaintiff must establish a constitutionally protected property or liberty interest and show that the state deprived the plaintiff of such interest without appropriate procedures. *See Rogers*, 273 F. App'x at 462 (citing *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 762 (6th 2005)).

Again, for purposes of the analysis of this claim, the Court assumed that Plaintiff had a constitutionally protected property or liberty interest but ultimately concluded that the Amended Complaint did not sufficiently allege that Plaintiff received insufficient due process.

Despite this Court previously finding that Plaintiff failed to allege that he did not receive sufficient notice of the hearing, or that the investigation and hearing were not adequate, Plaintiff is not in his motion for reconsideration attempting to argue just that. He is asserting that he was not provided notice of the charges against him, the evidence was not explained to him and that he was not provided an unbiased decision maker to hear his case. Defendants argue, and the Court agrees that the *Miami Univ.* case is factually different from the case at bar. The investigators on the claims against Plaintiff were not also on the hearing panel that adjudicated the claims. There was no change in law to serve as a basis for reconsideration of Plaintiff's claims. Further, although this Court noted that Plaintiff's allegations about the hearing process were concerning, it ultimately concluded that the hearing panel's procedures and deviations from the proper procedures did not rise to the level of a deprivation of due process. Thus, the Court's prior decision on this claim stands.

### 3. Equal Protection Clause

Plaintiff also seeks reconsideration of the dismissal of his Fourteenth Amendment Equal Protection claim. To state a claim for an equal protection violation based upon gender discrimination, Plaintiff must demonstrate that he was treated differently—under the same facts and circumstances—than a member of the opposite gender. *Kuhn v. Washtenaw Cty.*, 709 F. 3d 612, 624 (6th Cir. 2013). Plaintiff alleged that "gender discrimination caused the Individual Defendants to unlawfully find John Doe responsible for engaging in sexual misconduct with Jane Doe" and "female OSU students suffer no historical disadvantage regarding the discernment of

consent to intimate physical relationships with male students which would allow Individual Defendants to validly discriminate against male students like John Doe." (Doc. 36, Am. Compl. ¶ 212—213). This Court held that Plaintiff failed to include an example of a female student who was accused by another student of sexual misconduct under the same facts yet was either found not responsible or was not dismissed from OSU. Based on that reasoning, the Court dismissed Plaintiff's equal protection claim.

The Sixth Circuit in Miami University provided the following analysis on the plaintiff's equal protection claim:

> These alleged facts sufficiently show at the motion-to-dismiss stage that John and Jane were similarly situated. Vaughn had credible information that both students had potentially violated the University's sexual misconduct policy. Vaughn, however, chose not to pursue disciplinary action against the female student, but only against the male student. We note that the exact alleged sexual misconduct of each student is not the same. John, while extraordinarily inebriated, apparently engaged in non-consensual digital penetration and oral sex. Jane, apparently mostly sober, purportedly kissed John when he was incapacitated and unable to consent. But we have not previously required a plaintiff to allege that the misconduct giving rise to an allegedly discriminatory disciplinary outcome be of the same type and degree. *See Heyne*, 655 F.3d at 571 (holding that the plaintiff sufficiently pleaded an equal-protection claim when he alleged that he was punished more harshly for running over another student's foot with his vehicle than the other student was for threatening the plaintiff's life because of the different races of the two students).
>
> The instance of unequal treatment that John sufficiently pleads arises out of Vaughn's failure to initiate the University's disciplinary process with respect to Jane after receiving credible information that Jane may have violated the sexual-misconduct policy. *Cf. Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000) (affirming the grant of summary judgment for the defendants on plaintiffs' § 1983 equal-protection claim when the asserted disparate treatment was that the female plaintiffs were suspended after being caught violating the school rules, whereas the male students were not punished because the school had no notice of misconduct on their part). But equal protection does not require John and Jane to have received the same sanctions when the underlying alleged misconduct of the two was different; if Miami University had initiated disciplinary proceedings against Jane, this process may have led to a finding of not responsible or the imposition of a lesser sanction. None of these hypotheticals, unless impermissibly motivated by gender, would establish an equal-protection violation.

11

> John must also allege that the different treatment he received was based on "purposeful or intentional" gender discrimination. *Smith v. City of Salem*, 378 F.3d 566, 577 (6th Cir. 2004). John asserts the same facts that undergirded his Title IX claims of gender discrimination to buttress his § 1983 claim. Appellant Br. at 40. For the same reasons that we held that John had sufficiently pleaded facts demonstrating discriminatory intent under his Title IX erroneous-outcome claim, John has alleged sufficient facts to show circumstantial evidence of gender discrimination with respect to his equal-protection claim. *See* Section III.C supra. '[C]onstru[ing] the complaint in the light most favorable to the plaintiff,' *Keys*, 684 F.3d at 608, John has sufficiently pleaded an equal-protection claim. Of course this case is before us at the motion-to-dismiss stage, and discovery may disprove John's allegation that the reason he was treated differently than Jane was because of his gender and not because of other, legitimate reasons. But given the procedural posture in which the case currently stands, however, we must presume John's allegations to be true.

*Miami Univ.*, 882 F.3d at 596-597.

Defendants argue that Plaintiff's equal protection claim still fails despite the aforementioned analysis. Defendants assert that, like Plaintiff's deliberate indifference claim, he has not alleged that he was severely or pervasively sexually harassed. Specifically, Plaintiff never stated that Jane Doe's touching was unwelcome or amounted to harassment.

The Court agrees that Plaintiff's allegations in this case, and specifically with respect to the equal protection claim, could have been more specific. Plaintiff is now arguing that the Defendants, OSU, as well as individual Defendants Smith and Page, violated the equal protection clause when they initiated and disciplined Plaintiff, but not Jane Doe despite receiving information from Plaintiff that she may have also violated OSU's sexual misconduct policy. However, these allegations are not contained in the equal protection section of Plaintiff's Third Amended Complaint.

Nonetheless, Plaintiff has generally included these allegations and like the Sixth Circuit noted, this is before us at the motion-to-dismiss stage. Out of an abundance of caution and based

on the analysis of the Sixth Circuit in *Miami Univ.*, the Court reverses its' finding on Plaintiff's equal protection claim and reinstates that claim as to Defendants OSU, Smith, and Page.

      **3.**      **Qualified and Eleventh Amendment Immunity for the Individual Defendants**

In this Court's March 10, 2017 Opinion and Order, the Court did not consider the Individual Defendants' arguments on qualified and Eleventh Amendment immunity because all the claims against them were dismissed. Having reinstated Plaintiff's equal protection claim against Individual Defendants Smith and Page, the Court must now consider those arguments. The individual Defendants assert that they are entitled to qualified immunity on Plaintiff's claims against them in their individual capacities, and to Eleventh Amendment immunity for claims against them in their official capacities.

There is "a two-part test [that] determines whether qualified immunity applies: '(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established.'" *Miami Univ.*, 882 F.3d at 604 (quoting *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010)).

Plaintiff has sufficiently alleged a claim under § 1983 that Individual Defendants Smith and Page violated his equal protection rights and that those same rights were clearly established during the relevant time frame in this case, from 2014 through 2016. This was confirmed in *Miami Univ.*, where the Sixth Circuit specifically held that this right was clearly established: "John's 'right to freedom from invidious [gender] discrimination under the Equal Protection Clause was certainly clearly established at all times pertinent to this action . . . .' *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011)." *Miami Univ.*, 882 F.3d at 604. Thus, Individual Defendants Smith and Page are not entitled to qualified immunity on Plaintiff's equal-protection claim.

13

Further, the Individual Defendants Smith and Page are not entitled to Eleventh Amendment immunity because Plaintiff has sought injunctive and declaratory relief. The United States Supreme Court decision in *Ex parte Young* determined Eleventh Amendment immunity does not apply to a plaintiff's requests for injunctive relief and/or declaratory judgment. *See generally, Ex parte Young*, 209 U.S. 123, 150-156 (1908); *see also, Green v. Mansour*, 474 U.S. 64, 106 (1985)(determining declaratory relief is within ex parte Young's purview when violations of federal law are threatened or ongoing).

## IV. CONCLUSION

Based on the foregoing reasons, Plaintiff's Motion for Reconsideration is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's equal protection claim that was previously dismissed is reinstated against Defendants OSU, Smith, and Page. All other claims that were dismissed remain so.

The Clerk of this Court shall remove Document 72 from the Court's pending motions list.

**IT IS SO ORDERED.**

 *s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**