**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| John Doe, | : | |
| | : | Case No. 2:16-cv-00171 |
| Plaintiff, | : | |
| | : | Judge George C. Smith |
| v. | : | |
| | : | Magistrate Chelsey M. Vascura |
| The Ohio State University, | : | |
| | : | |
| Defendant. | : | |

**REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND**
**RESPONSES TO INTERROGATORIES**

Throughout discovery, Defendants have attempted to narrowly limit discovery, ignoring the content of specific discovery requests from Plaintiff, and instead producing select documents and responses in a general fashion to support its theory of the case. (Doc. No. 57) Defendants take the same approach in its response to Plaintiff's Motion to Compel. Instead of addressing the relevance of and its ability to respond to the specific discovery requests at issue in Plaintiff's Motion to Compel (Doc. Nos. 90 & 91), Defendants respond broadly and attempt to prohibit any of the requested discovery into relevant topics while ignoring their obligations under the Federal Rules of Civil Procedure. Defendants have failed to demonstrate that the requested discovery is irrelevant, unduly burdensome or not proportionate to the needs of the case. Accordingly, pursuant to Fed. R. Civ. P. 37, Defendants should be ordered to produce: (i) a privilege log[1]; (ii) documents exchanged with the U.S. Department of Education and its Office of Civil Rights relating to Title IX compliance at OSU; (iii) information and documents relating to

---

[1] In the motion, Plaintiff sought complete written responses to his discovery requests. Since filing the brief, Defendants notified Plaintiff that it overlooked one set of written responses and supplemented their responses to respond to the unanswered discovery requests. Thus, the issue raised in the Motion to Compel relating to unanswered discovery requests is resolved.

investigations at OSU into other Title IX matters of similarly situated students; (iv) documents relating to OSU's investigation and closing of its Office of Sexual Civility and Empowerment; (v) documents relating to OSU's Title IX policies and training materials; (vi) information and documents relating to pages on OSU's website relating to Title IX; and (vii) documents relating to other Title IX lawsuits brought against OSU by male students. Plaintiff also seeks the payment of expenses, including attorney's fees, for filing this motion. Fed. R. Civ. P. 37(a)(5).

A.     ADDITIONAL BACKGROUND FACTS AND INFORMATION

Since moving the Court to compel discovery, the Court ruled on Plaintiff's Motion to Reconsider (Doc. No. 94). As a result, the current claims in the case are: Title IX erroneous outcome claim against OSU and equal protection violation claim against OSU, Kelly Smith and Matthew Page.

B.     ARGUMENT

1.     Privilege Log

Defendants have not produced a privilege log. The pattern of promising to produce, but failing to do so, continues here. Defendants have been working on their document production for at least a year. Granted, the parties agreed to stay discovery to allow the Court time to rule on the Motion to Reconsider and this Motion to Compel and avoid repetitive discovery. However, it is inaccurate to say that any delay was due to settlement negotiations. The case was stayed after settlement efforts failed. The parties have discussed settlement on and off since the case was filed, all of which have failed. There are no ongoing settlement negotiations and no reason for Defendants to delay preparing and producing its privilege log. The purpose of the delay was to avoid the risk of reviewing documents multiple times or duplicative depositions.

Plaintiff's position is that the Court must set strict deadlines for Defendants to produce

the privilege log (and any other discovery ordered herein). Otherwise, the pattern of unnecessarily slow discovery responses will continue, all to the expense of Plaintiff, whose life's plans are on hold pending resolution of this case. The point of the discovery stay was so discovery can happen efficiently and effectively after the Court rules on the Motion to Compel. A deadline for the privilege log to be produced and further discovery will further that goal.

> **2.** **Requests for Documents Relating to the United States Department of Education and Compliance with Title IX**

Defendants' response to this section is a prime example of their efforts to avoid responding to specific discovery responses and limit discovery to general information that fits their narrative. Plaintiff sought to compel Defendants to respond fully to the following discovery requests contained in Plaintiff's First Request for Production of Documents, Document Request Nos. 8-12 and 27:

> 8. All documents concerning any investigation of OSU by the DOE concerning the handing of sexual misconduct cases or gender discrimination, including OCR Docket Nos. 15-10-6002, 15-13-2165, 15-15-2195, and 15-15-2208.
>
> 9. All documents concerning the DOE's April 11, 2011 Dear Colleague letter.
>
> 10. All documents concerning OSU's agreement with the DOE to resolve OCR Docket No. 15-10-6002.
>
> 11. All documents concerning OSU's fulfillment of the terms agreed to with DOE to resolve OCR Docket No. 15-10-6002, including the agreement to:
>
>> a. Appoint, and publicize the appointment of, a Title IX Coordinator and Deputy Title IX Coordinators;
>>
>> b. Create a Title IX webpage;
>>
>> c. Establish a centralized Office of University Compliance and Integrity;
>>
>> d. Create an OSU-wide Title IX notice of nondiscrimination;
>>
>> e. Add links to the Student Conduct website to access information about sexual harassment and sexual assault;

     f.   Form a sexual violence consultation team;

     g.   Increase Title IX training OSU-wide;

     h.   Create a system of cooperation with OSU police;

     i.   Demonstrate responsive and appropriate actions taken against students, faculty and staff who violate Title IX as it relates to sexual harassment and sexual violence; and

     j.   Address the sexually hostile environment that OSU alleged existed in the OSU Marching Band by issuing a statement to OSU.

12.    All status reports submitted to DOE.

27.    All documents concerning the University's efforts to comply with the provisions of Title IX since 2010.

(Exhibit 2)[2]. Instead of addressing these requests, Defendants seek a general order prohibiting any discovery into DOE pressure asserted on OSU to strictly enforce Title IX against male students accused of sexual assault, aside from select documents it has chosen to produce and make public.

     **a.**   ***The requested documents are relevant and reasonably calculated to lead to the discovery of admissible evidence.***

Defendant asserts that "Plaintiff's motion to compel provides no explanation regarding the relevance of these documents, other than to make the blanket statement that '. . . Defendant's efforts to comply with the response to pressure from OCR are relevant and discoverable." (Doc. No. 96, Memo in Opp., pp. 7-8) This is a false representation that ignores the brief and previous rulings from this Court.

Contrary to Defendants' representation, Plaintiff provided the following reasons why the documents are relevant:

(1) Plaintiff's allegations that Defendants' discrimination against him was motivated in

---

[2] The referenced exhibits are those filed with the Motion to Compel.

part by pressure from the U.S. Department of Education ("DOE") and its Office of Civil Rights ("OCR"), in particular because of OCR's investigation into OSU's Title IX compliance, which this Court recognized in the original Motion to Dismiss order, if true, would be circumstantial or indirect evidence of discrimination, *see Doe v. OSU*, No. 2:16-CV-171, 2017 WL 951464, *15, 17 (S.D. Ohio Mar. 10, 2017) (noting Title IX plaintiff alleged indirect/circumstantial evidence of gender bias in part by alleging "pressure from the executive branch of the Federal government . . . [related to] the temporal connection between . . . [DOE's] investigation of OSU and OSU's investigation of" plaintiff);

(2) those reasons contained in detailed briefing relating to Plaintiff's subpoena to the DOE/OCR, which the Court had recently addressed and which did not need to be completely restated in the Motion to Compel (*see* Doc. Nos. 66, 68); and

(3) the Court's ruling relating to Plaintiff's subpoena to the DOE/OCR that ***"'[a]ny documents or communications from the Department of Education to the University or from the University to the Department that may bear on the factors motivating Defendants should be in the University's possession and obtain[ed] from Defendants."*** (Doc. No. 87, pp. 2-3) (emphasis added).[3]

Because the relevance of the documents was contained in the opening brief, Defendants' request at p. 8, footnote 3, to file a sur-reply must be denied. Since Plaintiff has been alleging that pressure from the DOE/OCR led OSU to discriminate against him and other male students accused of sexual assault to avoid the loss of federal funds, Defendants cannot argue that

---

[3] Further demonstrating the relevance of the DOE/OCR documents in Title IX cases, counsel for Plaintiff issued the same subpoena to the DOE/OCR in a similar case they are litigating against the University of Cincinnati in the Western Division before Judge Dlott, who ordered the DOE/OCR to produce the requested documents. *See Gischel v. University of Cincinnati, et al.*, Case No. 1:17-cv-00475, Doc. No. 28.

Plaintiff has not made clear his argument for why the requested documents and communications are relevant.

In addition to this Court's rulings, the Sixth Circuit has ruled ***twice*** this year that pressure from the DOE/OCR on universities is circumstantial evidence that can be used to show discrimination under Title IX. *See Doe v. Baum, et al.*, ___ F.3d ___, 2018 WL 4265634, at **7-8 (6th Cir. Sept. 7, 2018) (finding pressure from the DOE and fear of losing federal funding, together with other allegations of bias, is sufficient to state a plausible claim of gender discrimination); *Doe v. Miami Univ.*, 882 F.3d 5979 (6th Cir. 2018) (finding plaintiff pled a plausible claim of gender discrimination because of allegations that Miami faced "pressure from the government to combat vigorously sexual assault on college campuses and the severe potential punishment—loss of federal funds—if it failed to comply.")

Additionally, as stated in the briefing relating to the DOE's subpoena, authority that pressure from the DOE/OCR is relevant in Title IX cases such as this goes well beyond the Sixth Circuit. *See, Schaumleffel v. Muskingum University,* No. 2:17-cv-463-GCS-KAJ, 2018 WL 1173043, at *16 (S.D. Ohio Mar. 6, 2018) (rejecting motion to dismiss Title IX claim because plaintiff alleged he was erroneously expelled in part because DOE pressure caused university to "fear" a loss of "federal funding."); *Gischel,* No. 1:17-cv-475, 2018 WL 705886, at *9 (rejecting motion to dismiss in part because of alleged gender bias pressure linked to OCR Title IX investigation since "[t]he Sixth Circuit has recognized that being investigated by the federal government for potential Title IX violations is a relevant allegation suggesting that the university might be induced to discriminate against males in disciplinary hearings for alleged sexual assault"); *Rolph v. Hobart & William Smith Colleges*, 271 F.Supp.3d 386, *11 (W.D.N.Y. 2017) (rejecting motion to dismiss Title IX erroneous outcome claim in part because plaintiff alleged

defendant university "faced pressure from the federal government to take a hard stance on sexual assault on campus. He focuses on OCR's "Dear Colleague Letter" from April 2011 . . . OCR's threat to withhold federal funding from schools . . . and the U.S. Department of Education's disclosure in May 2014 that [defendant university] was one of 55 universities under investigation . . . [which caused defendant university to] limit procedural protections afforded to male students . . . [to] avoid further scrutiny."); *Doe v. Marymount Univ.,* No. 1:17-cv-401-TSE-MSN, 2018 WL 1352158, *10 (E.D. Va. Mar. 14, 2018) (rejecting motion to dismiss in part because plaintiff alleged: "Marymount's sexual assault policy was influenced by [OCR's] Dear Colleague Letter and other political forces and that the University's procedures were designed to convict male students of sexual assault, whether they were guilty or not . . . ."); *Neal v. Col. St. Univ.,* No. 16-cv-873-(RM)(CBS), 2017 WL 633045, *14 (D. Col. Feb. 16, 2017)(rejecting motion to dismiss in part because plaintiff alleged his erroneous outcome involved university succumbing to "pressure to avoid DOE investigation and loss of federal funding . . . ."); *Doe v. Washington & Lee Univ.,* No. 6:14-cv-00052, 2015 U.S. Dist. LEXIS 102426, *29 (W.D. Va. Aug. 5, 2015)(refusing to dismiss Title IX claim in part because plaintiff alleged university was "under pressure from the government to convict male students of sexual assault, [therefore] a reasonable fact finder could plausibly determine that Plaintiff was wrongly found responsible for sexual misconduct and that this erroneous finding was motivated by gender bias."); *Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 747, 751 (S.D. Ohio 2014)(rejecting motion to dismiss in part because plaintiff alleged university made him a "scapegoat" in reaction to OCR's investigations of the university); *Collick v. William Paterson Univ.* No. 16–471(KM)(JBC), 2016 WL 6824374, *12 (D.N.J. Nov. 17, 2016) (refusing to dismiss a Title IX claim in part because plaintiff alleged OCR pressure may have caused university to "believe it was in the spotlight" and therefore

erroneously disciplined plaintiff to show it would sanction males accused of sexual misconduct)(affirmed in part, remanded in part on different grounds by *Collick v. William Paterson Univ.,* 699 Fed. Appx. 129 (3rd Cir. 2017)); *Doe v. Salisbury Univ.,* 123 F. Supp. 3d, 748, 768 (D.C. Md. 2015) (rejecting motion to dismiss in part because plaintiffs alleged university possessed communications evidencing its erroneous discipline of plaintiffs was causally linked to university's desire to demonstrate to DOE that the university would aggressively discipline male students); *Doe v. Lynn Univ., Inc.*, No. 9:16–cv–80850, 2017 WL 237631, *4 (S.D. Fla. Jan. 19, 2017) (refusing to dismiss Title IX claim where plaintiff alleged his discipline occurred in part because of pressure related to DOE directives interpreted by university as mandating discipline of male students accused of sexually assaulting female students); *Doe v. George Washington Univ.* No.18-cv-553, 2018 WL 1972461 (D.C.  Apr. 25, 2018)(finding allegations of external pressure related to OCR investigation against university would "forestall dismissal" of a Title IX complaint, but was not "sufficient to show likelihood of success . . . for a preliminary injunction."); *Doe v. Regents of Univ. of California*, No. 2:15-cv-02478-SVW-JEM (C. Dist. CA. June 8, 2017)(unreported)(rejecting motion to dismiss because plaintiff alleged university faced "growing local and national pressure" to discipline male students generated in part by female students' OCR complaints alleging the university "failed to adequately handle their complaints of sexual assault.")(reversed on other grounds by *Doe v. Regents of Univ. of California*, 2018 WL 1476666 (9th Cir. 2018);; s*ee also, Doe v. Brandeis Univ.*, 177 F.Supp.3d 561, 572 (D. Mass. 2016) (rejecting motion to dismiss breach of contract claim in part because: "[U]niversities across the United States have adopted procedural and substantive policies intended to make it easier for victims of sexual assault to make and prove their claims and for the schools to adopt punitive measures in response. That process has been

substantially spurred by the [2011] 'Dear Colleague' letter.").[4]

Defendants ignore this Court's prior determination that documents and communications between OSU and the DOE/OCR are relevant and should be produced by Defendants and ignore binding authority from the Sixth Circuit,[5] and instead point to an outdated, non-binding ruling in the *Waters* case. It simply cannot be that Plaintiff, or any other male plaintiff in a Title IX lawsuit, can rely on pressure from the DOE/OCR to allege a claim of discriminatory treatment, but not be entitled to discovery relating to the allegations. It also cannot be that Plaintiff is not entitled to documents from the DOE/OCR because he can obtain those documents from OSU, but that OSU can refuse to provide the documents. To find otherwise would be illogical.

      **b.**    ***The RFPs are not disproportionate to the needs of the case.***

Although Defendants do not address the RFPs individually, it appears that their argument regarding proportionality relates to RFP No. 27, which seeks "[a]ll documents concerning the University's efforts to comply with the provisions of Title IX since 2010." The request is not disproportionate because the estimated cost to OSU does not outweigh the cost to Plaintiff of losing the benefit of his college degree and the opportunity to pursue future education. For comparison of the harm to OSU of $50,000 in discovery, the Court should consider that the university recently approved a budget of $500,000 for the law firm of Debevoise & Plimpton to investigate misconduct allegations against Urban Meyer at an hourly rate      not      to      exceed      $1,620.      *See*

---

[4] The case Defendants relied upon, *Doe v. Baylor Univ.*, 6:16-cv-00173 (ECF No. 146, pp. 8-9) (W.D. Tx. July 26, 2017), is not helpful for the Court's determination of this issue because the third party records at issue there were investigations by the NCAA and the Texas Rangers, not third party documents relating to pressure asserted on the university to engage in gender discrimination. However, as discussed later, the case is very helpful to the Court in determining whether Defendants are entitled to records relating to other similar Title IX investigations. *Id.* at pp. 4-8.
[5] *Baum* was not issued when Defendants filed their brief. However, that decision relies heavily on *Miami*, which was issued at the time of filing.

https://www.cleveland.com/osu/2018/08/ohio_states_investigation_of_u.html (last accessed Sept. 13, 2018).

Even if RFP No. 27 is disproportionate, Plaintiff's intent is not to request every document sent to each of OSU's students and employees or unrelated Title IX documents. Accordingly, Plaintiff proposes the Court limit RFP No. 27 to documents relating to efforts to comply with Title IX's requirements relating to sexual misconduct, sexual assault, consent and sexual harassment. Moreover, in response to Defendants' representation that they do "not even know where to start to gather such documents," Plaintiff respectfully suggests the Court order the parties to agree to an ESI protocol and discuss which custodial files should be searched and what the agreed search terms should be. This approach is fairly standard protocol when conducting electronic discovery and will alleviate any remaining claims of undue burden or disproportionality. Plaintiff is entitled to the discovery.

       **c.**    ***The Court should order Defendants to provide complete responses.***

Defendants' statement that a "gargantuan" number of documents have been produced to Plaintiffs relating to the DOE/OCRs' investigation of OSU is simply untrue. In total, Defendants have produced 1,600 documents to Plaintiff, only a fraction of which relate to the DOE/OCR investigation.[6]

Throughout the discovery dispute relating to RFPs 8-12 and 27, Defendants have asserted that they have "produced or made available what it believes are all relevant documents related to its interactions with DOE/OCR (Per RFPD nos 8-12 and 27). The produced or made available OCR documents are those documents produced by OSU in the *Waters v. Drake* case." *See*, Ex. 9, p. 1, ¶ 1. However, for the reasons stated on page 1-2 of Exhibit 8, Plaintiff believes in good faith

---

[6] Plaintiff obtained over 8,000 documents from a subpoena it issued to NCHERM in this case. However, the vast majority of those documents do not relate to OSU specifically, for instance, there are repetitive copies of training manuals used by NCHERM.

that Defendants' production is not complete and they have not produced all relevant documents. Moreover, there is no reason why Plaintiff's discovery should be limited to whatever it is that the band director's attorney requested in discovery years ago.

Defendants admit at page 10 of their brief that it has not produced "internal communications about the issues and additional communications with DOE/OCR." These are the types of documents that are relevant and discoverable in cases such as this where it is necessary to use indirect proof or circumstantial evidence to prove discrimination. No one expects that a sophisticated entities like OSU and the U.S. Department of Education are going to publicly post a resolution that they have agreed to discriminate against male students in the handling of sexual misconduct complaints. Accordingly, Plaintiff requests the Court order Defendants to fully respond to Document Request Nos. 8-12 and 27

### 3. Requests For Information On Other Title IX Investigations Contained in the Spreadsheet and of Similarly Situated Students

#### a. *Documents relating to other similarly situated students*.

As stated in the opening brief, Defendants took the position during the discovery dispute that the Court had ruled that it was not required to provide any documents relating to other similarly situated students other than the spreadsheet that it prepared, but this position contradicts the language of the Court's order. Plaintiff agreed to accept the spreadsheet as a mechanism to narrow the requests to address Defendants' undue burden and proportionality arguments. In its response brief, Defendants have abandoned their position that the Court has precluded Plaintiff from obtaining this discovery and instead argues the discovery is not relevant and that Plaintiff should be required to rely solely on the spreadsheet prepared by Defendants.

In its response brief, Defendants relied on the *Baylor* case. Interestingly, that court addressed the exact same issue and found that the plaintiffs were entitled to student files of other

11

similarly situated students (in fact, the *Baylor* court granted much broader discovery than requested here, including all files relating to "sex" violations at the school). *Doe v. Baylor Univ.*, 6:16-cv-00173 (ECF No. 146, pp. -48) (W.D. Tx. July 26, 2017)

From Defendants' spreadsheet, Plaintiff has reasonably narrowed the request to documents in Defendant's possession and control relating to (1) the twenty female students identified in the spreadsheet (*see* Exhibit 8, p. 2-3 and Exhibit B thereto); and (2) all documents related to seven cases identified in the spreadsheet involving discipline similar to that imposed on Plaintiff, including (i) 2013138901; (ii) 2013207501; (iii) 2013230601; (iv) 2014000401; (v) 2014032801; (vi) 2014073403; and (vii) 2014125601. Plaintiff also requested all documents relating to OSU's "N/A" charging decision and/or "not in violation" findings in the following eight files identified in OSU's spreadsheet in *Exhibit 8A*: (i) 2013179301; (ii) 2013217503; (iii) 2014073403; (iv) 2014155101; and (v) 2013159002; (vi) 2014156401; (vii) 2013165602; and (viii) 2014029503. *Id.* Finally, Plaintiff requested Defendant supplement the spreadsheet to provide information about whether the matter was appealed and, if so, the outcome. *Id.*

The discovery is relevant to whether Defendants are treating similarly situated students differently than Plaintiff. As the Court ruled in *Miami,* evidence of gender discrimination in Title IX cases "might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender" and might include evidence that a female accuser was treated differently than a male. *Miami*, 882 F. 3d at 590, 593. Plaintiff cannot uncover this evidence and investigate its claims based solely on a summary chart prepared by Defendants. As the Court stated in *Baylor*:

The Court is acutely aware of the privacy concerns Baylor raises, and those concerns weigh heavily on nearly every decision made by the Court in this and related cases. But in this instance, at least, the Court cannot agree that those privacy concerns outweigh Plaintiffs' interest in being able to adequately investigate the substantial and serious allegations made in their complaint. The protective order the Court expects to enter in this case will add a substantial level of privacy protection to students whose records will be disclosed. Baylor's argument that the records from the ten Plaintiffs alone should be sufficient to demonstrate an official policy of discrimination, if one indeed exists or existed, seems to ignore the realities of how an official policy adopted by custom can be demonstrated. Reviewing Baylor employees' communications and records relevant to third-parties may provide details about exactly how sexual assault reports were handled at the school that are not apparent (or not as apparent) from Plaintiffs' own records, but still very relevant to their claims. Unlike in *Hernandez*, where the Court barred an early discovery request by the plaintiff because the information was accessible from other sources, here the Court finds it quite likely that the information Plaintiffs seek may only be available in these third-party records.

Moreover, the Court finds that allowing Baylor to prepare a spreadsheet summarizing third-party reports of sexual assault would almost completely undercut the documents' value to Plaintiffs.

Compiling summaries of "[h]ow Baylor learned of alleged assault," who at Baylor was "made aware of the alleged assault," and the "[d]isposition of the

13

complaint," will, in many cases, require weighing evidence and drawing conclusions about certain facts. It would be fundamentally unfair to allow Baylor to conduct that investigation itself. (Def.'s Post-Hearing Br., Dkt. 114, at 1–2). The Court has no trouble envisioning situations in which, after reviewing original documents, Plaintiffs and Defendant could reasonably come to different conclusions about who at Baylor knew about an assault, how the school learned of the assault, and how the report was ultimately resolved. To allow Baylor to make all of those conclusions would undercut the value of discovery regarding third-party assaults to Plaintiffs.

*Baylor* at pp. 6-7; *see also Doe v. Marymount Univ.,* Case No. 1:17-cv-401-TSE-MSN, 2018 WL 1352158, at *9 (E.D. Va. Mar. 14, 2018) (demonstrating the need to have access to the statements of relevant university personnel during the hearing of the case to find evidence of gender discrimination).

For the reasons stated herein, the requested student files are relevant and reasonably calculated to lead to the discovery of admissible evidence. The other relevant, related discovery requests, all of which Defendants refuse to respond to, or provide additional information aside from that in the spreadsheet, are:

Request for Admission No. 1, which Defendant objected to without responding.

1.  Admit some females in OSUs Spreadsheet in Exhibit A were alleged to have violated at least one of the four Policies in Exhibit B but OSU did not charge these females with violating said Polic(ies).

Plaintiff's Third Set, Interrogatory No. 15-18, which Defendant refused to respond.

15.  Identify all female student(s) and/or female employee(s) alleged to have violated any of the four Policies identified in Exhibit B.

16.  For each female identified in Interrogatory No. 15, identify all person(s) involved in

deciding whether to charge these female(s) with allegedly violating any of the four Policies identified in Exhibit B.

17. For each female student identified in Interrogatory No. 15, identify all person(s) involved in adjudicating any charge that these females violated any of the four Policies identified in Exhibit B.

18. For each female student identified in Interrogatory No. 15, identify all academic sanctions and/or employment related discipline imposed for alleged violations of any of the four Policies identified in Exhibit B.

(*See* Exhibit 7)

For the same reasons stated above, these requests are relevant and reasonably calculated to lead to the discovery of admissible evidence. As discussed below, Defendants' objections to the production of these documents should be overruled.

### b.  *The Narrowed Requests Are Neither Unduly Burdensome Nor Disproportionate to the Needs of the Case.*

Again, not to be repetitive, but as stated in the opening brief, the files at issue were likely already produced to OCR as part of its investigation into Title IX practices at OSU. Moreover, reviewing, redacting, and taking note of student names on 1,500 pages is not unduly burdensome nor is the estimated cost of $10,000. Defendants simply do not want to provide the requested discovery.

### c.  *The Protective Order Addresses Confidentiality and FERPA Concerns.*

Defendants' argument that the discovery sought contains sensitive or confidential material protected from disclosure by FERPA is not well taken. *See In re TJX Cos.,* No. 07-1853-KHV, 2008 U.S. Dist. LEXIS 46365, at *8-9 (D. Kan. June 12, 2008) ("As to plaintiffs' objection that the information sought may invade their privacy, this reason by itself is insufficient to make the discovery objectionable. Since there has been a protective order entered in this case . . . this type of information could be designated as 'confidential' and produced

pursuant to the protective order."). And, again, the *Baylor* case, which Defendants urge the Court to follow, likewise holds that the need for production of these types of records outweighs the need for privacy because the protective order addresses the FERPA concerns. *See* Baylor at p. 6.

> ### d. Plaintiff is entitled to the requested information about whether the case was appealed and, if so, the outcome of the appeal.

The parties disagree about what is the "outcome" of a case. Plaintiff's position is that, because OSU allows all students to appeal the outcome of a disciplinary proceeding, the outcome includes whether the case was appealed and, if so, the result of the appeal. Defendants disagree and assert that Plaintiff is not entitled to know if the cases on the spreadsheet were appealed and, if so, what the outcome of the appeal was. Plaintiff asserts that the relevant information is the final outcome, not the outcome at the hearing. Plaintiff is entitled to discovery about whether the appellate process at OSU was discriminatory.

For all of these reasons, Plaintiff is entitled to the requested files identified above from OSU, supplemental information in the spreadsheet about appeals, and complete responses to Request for Admission No. 1 and Interrogatory Nos. 15-18.

### 4. Documents Relating to OSU's Investigation of its Office of Sexual Civility and Empowerment

OSU closed its Office of Sexual Civility and Empowerment ("SCE") because it was "mismanaged" and "failed to properly document and report information regarding some sexual assault complaints by students." *See https://news.osu.edu/ohio-state-dissolves-sexual-civility-and-empowerment-unit/ (*last accessed Sept. 13, 2018). Central to the mismanagement and misdeeds was Natalie Spiert, OSU's employee who it assigned to serve as Jane Doe's advisor. She served as OSU's agent. If she was discriminatory towards male students, she did so as

OSU's agent and OSU is responsible for that discrimination whether or not she is a party. The relevant discovery requests are:

> 36.　All communication(s) and document(s) relating to the 2017 analysis of the OSU Office of Sexual Civility and Empowerment addressed in Christina L. Corl's October 16, 2017 letter in Exhibit A.
>
> 37.　All communication(s) and document(s) relating to your creation of OSU's Office of Sexual Civility and Empowerment.
>
> 38.　All communication(s) and document(s) relating to any training provided to your employees and/or agents associated with OSU's Office of Sexual Civility and Empowerment.

*See* Exhibit 7.[7]

Defendants have refused to respond to these requests as being either irrelevant or attorney-client privileged. However, the fact that Defendant has disclosed documents relating to the investigation to the media in response to FOIA requests demonstrates that at least some of the documents are not privileged. Defendant must either produce the documents or provide proof to meet its burden of demonstrating that the investigation was privileged. *See* *https://www.daytondailynews.com/news/osu-employees-failed-report-sexual-assault-called-survivors-delusional/J7L6xdH7cmgLKiHf7g1aCK/* (last accessed Sept. 13, 2018) ("About 200 documents released to the Dayton Daily News by Ohio State this week show that several complaints were lodged against the SCE's leadership and show that there was an internal struggle for power of the organization. Among those criticized were assistant director Natalie Spiert . . .")

As Exhibit B to its response brief, Defendants provided an affidavit from an employee (title unknown) of the Office of Legal Affairs, asserting that the requested documents are

---

[7] These discovery requests were served before Plaintiff had knowledge of the suspension and closing of the Office of Sexual Civility and Empowerment or of the involvement of another law firm in the investigation. However, Plaintiff asks the Court to address the full investigation in its ruling to avoid future discovery issues.

privileged. However, the affidavit does nothing to prove that the investigation or related documents are privileged. There are no dates, no names, or other specific information to prove that a privilege exists. The affidavit does nothing more than say, the documents are privileged because we say so. This is simply insufficient to prove that any of the documents relating to the investigation of the Office of Sexual Civility or Spiert are privileged. And, it seems to contradict counsel of record's letter to NCHERM asserting privilege over the documents after the subpoena was served. (*See* Exhibit 8D).

Plaintiffs respectfully request that the Court order Defendants to fully respond to RFP Nos. 36-38 for all of its investigations into the Office of Sexual Civility and Empowerment and Natalie Spiert.

### 5. Documents relating to OSU's Title IX Policies and Training Materials

Plaintiff sought to compel full responses to the following Request for Production of Documents:

19. The University's policies, procedures, rules, and regulations concerning sexual assault that were in effect during the following school years:  (a) 2010-2011; (b) 2011-2012; (c) 2012-2013; (d) 2013-2014; (e) 2014-2015; (f) 2015-16; and (g) 2016-17.

20. All documents concerning any proposed revisions made or not made to the OSU's policies, procedures, rules, and regulations concerning sexual assault during the years 2010 to date.

24. All documents concerning the training or guidance given to any OSU employee or student who was involved in any way in the investigation, evaluation, prosecution, adjudication, or appeal of the charge against John Doe.

26. All documents concerning the operation and conduct of the University Conduct Board or the training of its members for the following school years:  (a) 2010-2011; (b) 2011-2012; (c) 2012-2013; (d) 2013-2014; (e) 2014-2015; (f) 2015-16; and (g) 2016-17.

27. All documents concerning the University's efforts to comply with the provisions of Title IX since 2010.

28. All documents concerning training or guidance given to any OSU employee or student concerning Title IX, sexual misconduct, sexual violence, sexual harassment or consent since 2010.

Defendants assert that they should only be required to provide the actual policies and training materials and not any correspondence, committee meeting minutes, meeting agendas, etc. relating to changes to the policies and procedures. This information is relevant and discoverable because it may show that OSU was guided by gender discrimination in its policy and procedure preparation or implementation.

Plaintiff's requests are tailored to sexual misconduct, sexual violence, consent and sexual harassment under Title IX. And, again, to the extent they are not, Plaintiff does not object to any such limitation. Defendant's exaggerated examples that Plaintiff is seeking documents about field time for the women's soccer team is another attempt to avoid responding to any of the discovery requests. Plaintiff's counsel is willing to assert that defense counsel would admit that they know Plaintiff's counsel are not seeking information about scheduling field time for the soccer teams. It does nothing more than evidence Defendants' desire to avoid discovery in this case.

Thus, Plaintiff respectfully moves this Court to compel Defendant to fully respond to Request for Production Nos. 19-20, 24-28.

### 6.      Documents from OSU's Website

Document Request Numbers 21 and 22 seek information about information on OSU's Office of Sexual Civility and Empowerment website, as follows:

21. A copy of OSU's Office of Student Life's Sexual Civility and Employment website representing that "1/4 college women report surviving rape or attempted rape at some point in their lifetime" and all documents to support this assertion.

22. A copy of OSU's Office of Student Life's Sexual Civility and Employment website representing that "1 out of 6 American women has been the victim of attempted or complete rape . . ." and all documents to support this assertion.

Defendant has refused to produce the requested documents. *See Exhibit H, p. 4, I, p. 3, ¶ 5 and J, p. 3.* Again, these documents are relevant and discoverable and Defendant should be ordered to respond fully to Document Request Nos. 21 and 22. Defendants assert they do not know how to produce a website. It is their website developed by their sophisticated IT department. Their employees know how to produce a verified copy of a website. Moreover, a copy of the website is only a portion of the requests, Defendants have also not produced the requested documents to support the assertions referenced in RFP Nos. 21 and 22. Accordingly, Defendants should be ordered to fully respond to RFP Nos. 21 and 22.

### 7. Documents from other Title IX lawsuits filed by males against OSU

In his Third Request for Production of Documents, Plaintiff requested all documents produced from OSU to the Plaintiff in two other similar cases in the Southern District of Ohio: (1) *John Doe v. The Ohio State University, et al.*, No. 2:15-cv-02830; and (2) *Waters v. Drake, et al.*, No. 2:14-cv-01704. As both cases have similar allegations, Plaintiff asserts that the productions likely contain relevant information that can be produced pursuant to the protective order. Plaintiff disagrees saying the documents are irrelevant and the requests unduly burdensome, overly broad, and disproportionate. *See* Exhibit 7. However, the document exchange in those cases more likely than not happened electronically. Defendant can simply forward the production. Because the parties cannot agree on this issue, it is respectfully submitted to the Court for decision on whether Defendant is required to produce the documents requested in Document Request Nos. 39 and 40.

### C. CONCLUSION

The Court should grant the Motion to Compel and require Defendant to provide: (i) a privilege log; (ii) documents exchanged with the U.S. Department of Education and its Office of

Civil Rights relating to Title IX compliance at OSU; (iii) information and documents relating to

investigations at OSU into other Title IX matters of similarly situated students; (iv) documents

relating to OSU's investigation and closing of its Office of Sexual Civility and Empowerment;

(v) documents relating to OSU's Title IX policies and training materials; (vi) information and

documents relating to pages on OSU's website relating to Title IX; and (vii) documents relating

to other Title IX lawsuits brought against OSU by male students. Plaintiff should also be

awarded expenses, including attorney's fees, for filing this motion. Fed. R. Civ. P. 37(a)(5).

Respectfully submitted,

/s/ Tracy L. Turner
TRACY L. TURNER, Of Counsel (0069927)
ERIC J. ROSENBERG  (0069958)
Rosenberg & Ball Co., LPA
395 North Pearl Street
Granville, Ohio  43023
Telephone:  (740) 644-1027
Facsimile:  (866) 498-0811
ericrosenberg@rosenbergball.com
tturner@rosenbergball.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of September, 2018, I filed the foregoing with the

Clerk of Court, who will send notification to all counsel via the Court's electronic filing system.

/s/ Tracy L. Turner
Tracy L. Turner