UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN DOE,

        Plaintiff,

    v.                              **Case No. 2:16-cv-171**
                                            **Judge George C. Smith**
                                          **Magistrate Judge Chelsey M. Vascura**

THE OHIO STATE UNIVERSITY, *et al.*,

        Defendants.


## OPINION AND ORDER

This matter is before the Court upon Plaintiff John Doe's Motion to Compel Production of Documents and Responses to Interrogatories by Defendant The Ohio State University ("Plaintiff's Motion to Compel") (ECF No. 90).  The motion is fully briefed and ripe for disposition.  For the following reasons, Plaintiff's Motion to Compel is **GRANTED IN PART and DENIED IN PART**.

### I.      BACKGROUND

The factual background of this case has been detailed in the Court's previous orders of March 10, 2017 (ECF No. 50) and August 20, 2018 (ECF No. 94).  In brief, Plaintiff John Doe was a student at The Ohio State University ("OSU") and also worked as an RN at OSU's Wexner Medical Center ("OSUWMC").  John Doe initially met Jane Doe in 2012 when she was brought in to OSUWMC.  The couple dated and were involved in a sexual relationship through 2014.  Seven months after the couple's last encounter, Jane Doe filed a complaint with

OSUWMC alleging that John Doe had sexually assaulted her on or about November 20, 2014. (Am. Compl. ¶ 69, ECF No. 36.)

OSU investigated Jane Doe's complaint and held a hearing. John Doe was found to have violated OSU's Code of Student Conduct and was permanently dismissed from OSU and barred from ever being present on any OSU campus or property in the future. (*Id.* at ¶ 114.) John Doe was also forced to resign from his position at OSUWMC. John Doe's subsequent appeal to OSU's Vice President for Student Life was unsuccessful. (*Id.* at ¶ 116.)

Plaintiff then initiated this case. After ruling on Defendants' Motion to Dismiss and on reconsideration of that order, the only claims remaining are Plaintiff's "erroneous outcome" claim against OSU under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, and Plaintiff's equal protection claim under the Fourteenth Amendment against OSU and individual defendants Kelly Smith and Matthew Page. (ECF Nos. 50, 94.)

Plaintiff now brings this Motion seeking further written discovery responses and production of documents from OSU. In opposition, OSU primarily asserts that Plaintiff's discovery requests seek irrelevant documents and are not proportional the needs of the case.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1), which sets forth the permissible scope of discovery, provides:

> **Scope in General**. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

2

Determining the scope of discovery is within the Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). As the United States Court of Appeals for the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). However, revisions to the Federal Rules of Civil Procedure in 2015 "encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26, Advisory Committee Notes to the 2015 Amendment. "The proportionality standard is the instrument by which judges and practitioners are to bring about a change in the culture of discovery, requiring lawyers, with the guidance of involved judges, to 'size and shape their discovery requests to the requisites of a case.'" *Waters v. Drake*, 222 F. Supp. 3d 582, 605 (S.D. Ohio 2016) (quoting Chief Justice Roberts, 2015 Year-End Report on the Federal Judiciary at 7).

"[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Guinn v. Mount Carmel Health Sys.*, No. 2:09-cv-226, 2010 WL 2927254, at *5 (S.D. Ohio July 23, 2010) (quoting *Clumm v. Manes*, No. 2:08–cv–567, 2010 WL 2161890 (S.D. Ohio May 27, 2010)); *see also Berryman v. Supervalu Holdings, Inc*., No. 3:05-cv-169, 2008 WL 4934007, at *9 (S.D. Ohio Nov. 18, 2008) ("At least when the relevance of a discovery request has been challenged the burden is on the requester to show the relevance of the requested information." (internal citation omitted)). However, the burden to demonstrate that the requested discovery would be disproportional to the needs of the case rests with the objecting party. *Bros. Trading Co. v. Goodman Factors*, No. 1:14-CV-975, 2016 WL 9781140, at *2 (S.D. Ohio Mar. 2, 2016) (Rule 26(b)(1) does not place the burden of addressing proportionality considerations on the requesting party; nor does it permit the opposing party to

avoid responding simply by making a boilerplate objection on grounds of proportionality)

(quoting Fed. R. Civ. P 26, Advisory Committee Notes (2015)).

## III.    DISCUSSION

Plaintiff asks the Court to compel further written discovery responses and production of

documents by OSU as follows:

> (i) complete written responses to Plaintiff's First Request for Production of Documents and a privilege log; (ii) documents exchanged with the U.S. Department of Education and its Office of Civil Rights relating to Title IX compliance at OSU; (iii) information and documents relating to investigations at OSU into other Title IX matters of similarly situated students; (iv) documents relating to OSU's investigation and closing of its Office of Sexual Civility and Empowerment; (v) documents relating to OSU's Title IX policies and training materials; (vi) information and documents relating to pages on OSU's website relating to Title IX; and (vii) documents relating to other Title IX lawsuits brought against OSU by male students.

(Pl.'s Brief in Supp. 1, ECF No. 91.)  Plaintiff also seeks an award of expenses, including

attorney's fees, incurred in filing the instant motion under Fed. R. Civ. P. 37(a)(5).  (*Id.*)

On October 9, 2018, OSU notified the Court that it had served Plaintiff with the

requested privilege log on October 8, 2018.  (ECF No. 98.)  It also appears from the parties'

opposition and reply briefs (ECF Nos. 96–97) that OSU's complete written responses to

Plaintiff's First Request for Production of Documents have also been served, fully resolving the

first category of discovery sought by Plaintiff in his Motion.  The Court will consider the

remaining categories in turn.

## A.    Communications regarding the U.S. Department of Education and its Office of Civil Rights and to Title IX compliance at OSU

Plaintiff requests communications, both internal to OSU and between OSU and the

Department of Education ("DOE") and its Office of Civil Rights ("OCR"), relating to Title IX

compliance at OSU.  (*See* Pl.'s First Set of Requests for Production, ECF No. 91-2, Req. Nos. 8–

12, 27.)  Plaintiff seeks these documents in support of his allegations that OSU discriminated

against male students in its procedures for responding to sexual misconduct complaints because of pressure exerted by the DOE and OCR—in particular, because of OCR's investigation into OSU's Title IX compliance.  Although OSU has provided some documents in response to these requests, as well as pointed Plaintiff to many publicly-available responsive documents, Plaintiff contends OSU's production is incomplete.  Namely, Plaintiff submits that beyond a small number of communications, OSU did not provide documents that relate to certain OCR investigations identified in Plaintiff's document requests; the publicly available status reports by OSU to the DOE reference many attachments or enclosures that were not provided by OSU in discovery; and OSU's production included neither documents that Plaintiff obtained via a Freedom of Information Act request to the DOE, nor documentation that Plaintiff contends is commonly exchanged between universities and the DOE during inquiries into Title IX compliance.  (*See* Letter dated March 20, 2018 from Pl.'s Counsel, ECF No. 91-8.)

OSU admits that it has not produced responsive "internal communications about the issues and additional communications with DOE/OCR."  (OSU's Resp. at 10, ECF No. 96.)  OSU argues that these documents are irrelevant because they "will not reveal how the University actually handled reports of sexual misconduct (which is relevant), but rather how University representatives discussed doing so with various other entities (which is not relevant)."  (*Id.*)  In support, OSU cites *Waters v. Drake*, 222 F. Supp. 3d 582, 602 (S.D. Ohio 2016), which held that "[e]ven if the real reason that Ohio State terminated Waters was to appease OCR, there is no evidence to support an inference that a discriminatory animus against men motivated the alleged effort to scapegoat Waters."  222 F. Supp. 3d at 602.

However, in an earlier opinion in this case on OSU's Motion to Dismiss, this Court held that the temporal proximity of the OCR's investigation of OSU's Title IX compliance and

statements in documents related to a subsequent settlement with the OCR could provide circumstantial evidence of gender bias. *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1070 (S.D. Ohio 2017). Moreover, the Sixth Circuit has twice recently affirmed, in similar Title IX erroneous outcome cases, the relevance of pressure from the DOE and OCR on universities to more effectively respond to complaints of sexual misconduct. *See Doe v. Baum*, 903 F. 3d 575, 586 (6th Cir. 2018) ("external pressure" from a federal government investigation to determine whether the defendant university's process for responding to allegations of sexual misconduct discriminated against women "provides a backdrop that, when combined with other circumstantial evidence of bias in [the plaintiff's] specific proceeding, gives rise to a plausible claim" for erroneous outcome under Title IX); *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018) (allegations that "pressure from the government to combat vigorously sexual assault on college campuses" "led [the defendant university] to discriminate against men in its sexual-assault adjudication process" sufficiently stated a claim for erroneous outcome under Title IX). OSU's communications regarding the OCR investigation and other interactions with DOE and OCR are therefore relevant.

OSU further objects that Plaintiff's requests are overbroad and voluminous, as responding would entail an estimated $50,000 in legal fees and production costs, and that the requests potentially encompass areas of Title IX completely unrelated to Plaintiff's claims (*e.g.*, Title IX's athletic requirements). (OSU's Resp. 10–11, ECF No. 96.) In reply, Plaintiff offered to limit his requests to OSU's efforts to comply with Title IX's requirements relating to sexual misconduct, sexual assault, consent, and sexual harassment. (Pl.'s Reply 10, ECF No. 97.) And in response to OSU's assertion that it "would not even know where to start" searching for remaining responsive documents (ECF No. 96 at 10), Plaintiff suggests that the parties attempt to

6

agree to a protocol for identifying potentially responsive electronically-stored information ("ESI"), including the identification of document custodians and search terms. (ECF No. 97 at 10.)

The Court agrees that, when limited to OSU's efforts to comply with Title IX's requirements relating to sexual misconduct, sexual assault, consent, and sexual harassment, Plaintiff's requests seek relevant documents. The Court further finds that OSU has not demonstrated at this stage that Plaintiff's requests are not proportional to the needs of the case.[1] The parties are therefore **ORDERED** to meet and confer in an effort to reach an agreed ESI protocol for the purpose of completing OSU's document production in response to Plaintiff's Request Nos. 8–12 and 27. If necessary, OSU may renew its proportionality objections at a later stage once the parties have more clarity about the number of documents involved.

**B.    Information and documents relating to investigations at OSU into other Title IX matters of similarly situated students**

The undersigned previously entered an order following a discovery conference, noting that, in response to Plaintiff's Request for Production No. 29 for "all documents concerning any investigation, evaluation, prosecution, adjudication, or appeal of a charge of sexual assault, sexual misconduct, sexual harassment or a similar offense made to OSU," the parties agreed that OSU would compile and produce statistics for the period of 2010 to the present. (ECF No. 60.) The parties "agreed that the statistics to be compiled would reflect the gender of the accused, the gender of the accuser, the charges, the relevant dates, the outcome of each case, and the identity of the investigators." (*Id.*) OSU produced a spreadsheet containing the agreed-upon information, resulting in a list of nearly 1,200 sexual misconduct cases.

---

[1]Although OSU's $50,000 cost estimate is not insubstantial, the Court questions whether OSU could provide an accurate estimate while at the same time being unsure of how to go about identifying responsive documents.

### 1.    Full case files

Of those nearly 1,200 cases, Plaintiff is now requesting the full case files for 35: all 20 cases in which a female student was the accused, 7 cases in which male students received discipline similar to Plaintiff's, and 8 cases in which the "findings" were listed as "N/A" or "not in violation."  Plaintiff seeks these case files to support allegations that OSU treated similarly-situated students differently than Plaintiff based on their gender.

OSU does not object to the relevance of the requests, but it raises concerns regarding the burden associated with complying with the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.  OSU is correct that the case files are protected by FERPA and cannot be produced without either the written consent of the students in question (or, depending on the age of the student, their parents) or a court order.  *United States v. Miami Univ.*, 294 F.3d 797, 813 (6th Cir. 2002); 20 U.S.C. § 1232g(b)(2).  And even if the Court orders production, any student whose identifying information is contained in the case files must be notified prior to OSU's release of the records.  20 U.S.C. § 1232g(b)(2)(B).  But "[e]ven though [OSU] is required to make a reasonable effort to provide notice, with the opportunity to object, consent of the affected persons is not required where disclosure is court-ordered and subject to a protective order."  *Jackson v. Willoughby Eastlake Sch. Dist.*, No. 1:16-cv-3100, 2018 WL 1468666, at *4 (N.D. Ohio Mar. 23, 2018).

OSU estimates that each full case file contains approximately 100 pages and, apparently mistakenly believing that Plaintiff requested only 15 full case files, estimates that it will take, at minimum, 90 days to identify all students named in the "1,500 pages" and provide the required FERPA notices, which will cost $10,000.  (Resp., ECF No. 96 at 15.)  OSU also estimates that, after FERPA notices have been issued, it will take another 90 days at a cost of an additional $10,000 to complete appropriate redaction of the documents.  (*Id.*)

However, while underestimating the number of pages at issue, OSU overestimates the time and effort required by FERPA compliance.  So long as the required notice is provided to students or their parents, OSU need not redact the students' identifying information prior to producing the case files.  *Doe v. Ohio*, No. 2:91-CV-0464, 2013 WL 2145594, at *6 (S.D. Ohio May 15, 2013) ("Defendants could either comply with FERPA's requirement 'that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency,' 20 U.S.C.A. § 1232g(b)(2), *or* Defendants could redact all personally identifiable information.") (emphasis added).  Thus, only a single round of review will be necessary.

The Court finds that OSU has not demonstrated that the burden of complying with FERPA is disproportionate to the needs of the case.  Review of 3,500 pages does not strike the Court as unduly burdensome, especially when OSU has not contested the relevance of these documents and Plaintiff has narrowed down the list of nearly 1,200 potentially relevant cases to only 35.  The Court therefore **ORDERS** OSU to produce, after providing the required notice to students under FERPA, the 35 full case files requested by Plaintiff.  The Court further **ORDERS** that all documents produced in discovery and containing students' identifying information be designated "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER" pursuant to the parties' stipulated protective order.  (ECF No. 54.)

### 2.    Information related to outcomes of appeals

Plaintiff further asks OSU to provide an additional column to the spreadsheet indicating for all 1,200 cases whether the matter was appealed and, if so, the outcome.  Plaintiff asserts he is owed this information as part of the agreed-upon data to be provided in the original spreadsheet, which included "the outcome of each case."  (Order Memorializing Oct. 2, 2017

Disc. Conf., ECF No. 60.)  Plaintiff maintains he is entitled to discovery regarding whether the appellate process at OSU was discriminatory.  (Pl.'s Reply 16, ECF No. 97.)

OSU contends that "the outcome of each case" does not encompass appeal-related information and that, if Plaintiff wanted this additional data, he should have requested it at the time the parties agreed to the compilation of the spreadsheet.  (OSU's Resp. 19, ECF No. 96.) OSU states that it took five months for OSU to compile the data for the spreadsheet and that it would take another five months, and cost over $20,000, to re-review its case files to comply with Plaintiff's appeal-related request.  (*Id.* at 20.)

The Court agrees with Plaintiff that appeal information is relevant to Plaintiff's claims. Plaintiff appealed his case, and his appeal was denied without explanation.  (Order on Mot. to Dismiss 15, ECF No. 50.)  The existence of gender bias in the appellate process would be just as relevant to Plaintiff's claims as the existence of gender bias in the initial disciplinary proceeding. *See Doe v. Miami Univ.*, 882 F.3d at 593 (evidence demonstrating a causal connection between an erroneous outcome and gender bias might include "patterns of decision-making that also tend to show the influence of gender").

Moreover, the appeal-related information is encompassed within the data agreed to by the parties in October 2017.  The ordinary meaning of the "outcome" of a case is the final outcome, including any appellate proceedings.  If OSU wished to provide information short of the final outcome of each case, it had the opportunity to raise the issue prior to expending five months to review its case files.  The Court also doubts OSU's conclusory assertion that it will take just as long to review each of its case files for two pieces of information—whether the initial finding was appealed and, if so, whether the initial finding was upheld or reversed—as it did to review each file for the information contained in the 11 columns of the existing spreadsheet.

Accordingly, the Court finds that OSU has not demonstrated that providing appeal data will be unduly burdensome or disproportionate to the needs of the case.  Therefore, OSU is **ORDERED** to provide the additional appeal-related information requested by Plaintiff for all cases in the spreadsheet.

> ### 3.    Remaining written discovery responses

Plaintiff also asks that OSU respond or supplement its responses to its Interrogatories Nos. 15–18 and Request for Admission No. 1.  OSU asserted in its interrogatory answers and its opposition brief that Interrogatories Nos. 15–18 are answered by information contained in the spreadsheet.  The Court is inclined to agree, and, as Plaintiff did not address these interrogatories on reply, the Court deems these interrogatory answers to be resolved.

As for Request for Admission No. 1, Plaintiff asks OSU to "[a]dmit some females in OSU's Spreadsheet [ ] were alleged to have violated at least one of the four Policies in Exhibit B but OSU did not charge these females with violating said Polic(ies)."  (OSU's Resp. to Pl.'s First Set of Reqs. for Admission 1, ECF No. 91-7.)  OSU objects to this Request as "vague, ambiguous and lack[ing] the specificity required to allow Defendant to provide a response." (*Id.*)  In its opposition brief, OSU contends that (1) OSU cannot respond unless Plaintiff identifies which of the 1,200 cases in the spreadsheet are encompassed by the request, and (2) OSU cannot respond unless Plaintiff provides a definition for the word "charge."  (OSU's Resp. 16, ECF No. 96.)

Neither of these objections have merit.  OSU compiled the spreadsheet, which identifies the gender of both alleged victims and accused.  The "females in OSU's Spreadsheet" at issue involve the cases in which the victim or accused was a female student.  No specific case numbers need be provided by Plaintiff to identify the relevant cases.  Further, the spreadsheet itself (again, compiled by OSU) has a column labeled "Charges" and another labeled "Charges with

11

Findings."  As the Request refers to female students in the spreadsheet, it is a fair assumption that Plaintiff intended the meaning of "charge" as used by OSU in the spreadsheet.  The Court therefore finds that Request for Admission No. 1 is not so ambiguous as to preclude a response, and OSU is **ORDERED** to provide a response.

C.  **Documents relating to OSU's investigation and closing of its Office of Sexual Civility and Empowerment**

Plaintiff alleges that Natalie Spiert, an employee of OSU's Office of Sexual Civility and Empowerment ("SCE"), exhibited gender bias in the performance of her duties, which included acting as Jane Doe's assigned advisor in the sexual misconduct complaint process.  Based on these allegations of bias on the part of Ms. Spiert, Plaintiff seeks documents related to OSU's investigation, and eventual closure, of the SCE office, which also resulted in Ms. Spiert's termination.  (OSU's Resp. to Pl.'s 3d Set of Reqs. for Production, Req. Nos. 36–38, ECF No. 91-7.)  In support of these documents' relevance, Plaintiff points to an article in OSU's student newspaper reporting on documents released by OSU related to an external review of SCE.  (ECF No. 9-18.)  Reports made in connection with the external review included that "during a presentation to all the coaches in the athletics Department, [Spiert told] the coaches she knew they would 'go home and beat their wives,'" and that "SCE told survivors that they should embellish their stories to receive justice or legal protection."  (*Id.*)

OSU argues that the investigation and closure of SCE are not relevant to Plaintiff's claims.  Ms. Spiert was not a decision-maker in Plaintiff's case, and all SCE records related to Plaintiff or Jane Doe, as well as all communications between Ms. Spiert and Jane Doe, have already been produced.  (OSU's Resp. 20–22, ECF No. 96.)  Moreover, Plaintiff asserted claims against Ms. Spiert in her individual capacity, but the Court granted Defendants' motion to

12

dismiss those claims, and that determination was re-affirmed on Plaintiff's motion for reconsideration.  (ECF Nos. 50, 94.)

The Court concludes that Plaintiff has not demonstrated the relevance of the requested SCE documents.  OSU therefore need not respond any further to Plaintiff's Request for Production Nos. 36–38.[2]

**D.      Documents relating to OSU's Title IX policies and training materials**

Plaintiff seeks policies and training materials related to Title IX or sexual misconduct, as well as documents relating thereto, such as e-mails, correspondence, committee meeting minutes, meeting agendas, or information provided to individuals involved in the preparation of the documents.  (Pl.'s Brief 16, ECF No. 91; Pl.'s 1st Set of Reqs. for Production, Req. Nos. 19–20, 24, 26–28, ECF No. 91-2.)  OSU has already produced the final versions of the policies and training materials themselves, but objects to producing any related communications, meeting minutes, etc., on grounds of irrelevance.  (Resp. 25–26, ECF No. 96.)  Plaintiff relies primarily on Ms. Spiert's training presentation to the athletics department and the possibility that she provided training to the decision-makers in Plaintiff's case to establish relevance.  OSU admits that Ms. Spiert provided "a brief training" "to the hearing panel which decided Plaintiff's case," but points out that a copy of that training has already been produced.  (*Id.* at 26–27.)  The remaining documents requested by Plaintiff would, OSU contends, "not reveal how [OSU] directly handled reports of sexual assault, but how [OSU's] representatives talked about doing so . . . ."  (*Id.* at 27 (quoting *Doe I v. Baylor Univ.*, Case No. 6:16-cv-00173 (ECF #146, pg. 9) (W.D. Tx. July 26, 2017)).)

---

[2] OSU also objects to producing documents related to the SCE investigation on grounds of attorney-client privilege.  (OSU's Resp. at 22–25, ECF No. 96.)  Because the Court finds the requested documents not relevant, the undersigned need not determine whether the documents are privileged.

The Court acknowledges the breadth of the documents sought by Plaintiff, but it also recognizes that relevant evidence of bias may exist outside formal policies and training materials. The Court therefore narrows Plaintiff's requests and **ORDERS** OSU to produce all communications concerning the training or guidance given to any OSU employee who was involved in any way in the investigation, evaluation, prosecution, adjudication, or appeal of the charge against John Doe, provided that the training or guidance must be related to Title IX's requirements relating to sexual misconduct, sexual assault, consent, and sexual harassment, or other OSU policies related to sexual misconduct. The parties may wish to meet and confer regarding appropriate document custodians and search terms to identify potentially responsive documents. OSU need not respond any further to Plaintiff's Request for Production Nos. 19–20, 26–28.

**E.      Information and documents relating to pages on OSU's website relating to Title IX**

Plaintiff's Request for Production Nos. 21 and 22 seek information about the information reflected on OSU's Office of Sexual Civility and Empowerment website, as follows:

> 21. A copy of OSU's Office of Student Life's Sexual Civility and Employment website representing that "1/4 college women report surviving rape or attempted rape at some point in their lifetime" and all documents to support this assertion.

> 22. A copy of OSU's Office of Student Life's Sexual Civility and Employment website representing that "1 out of 6 American women has been the victim of attempted or complete rape . . . ." and all documents to support this assertion.

(Pl.'s 1st Set of Reqs. for Production, Req. Nos. 21–22, ECF No. 91-2.) OSU objects on grounds of relevance. (Resp. at 27–28, ECF No. 96.) As discussed above, Plaintiff has not established the relevance of documents created by SCE, and he makes only conclusory statements regarding

the relevance of these requests.  (Pl.'s Brief 17, ECF No. 91; Pl.'s Reply 20, ECF No. 97.)

Accordingly, OSU need not respond further to Request for Production Nos. 21–22.[3]

## F.      Documents relating to other Title IX lawsuits brought against OSU by male students

Plaintiff's Request for Production Nos. 39–40 seek all documents produced from OSU to

the plaintiff in two other cases with similar allegations of Title IX violations in the Southern

District of Ohio: (1) *John Doe v. The Ohio State Univ.*, No. 2:15-cv-02830; and (2) *Waters v.*

*Drake,* No. 2:14-cv-01704.  (Defs.' Resp. to Pl.'s 3d Set of Reqs. for Production, Req. Nos. 39–

40, ECF No. 91-7.)  Plaintiff contends that, "[a]s both cases have similar allegations . . . the

productions likely contain relevant information that can be produced pursuant to the protective

order." (Pl.'s Brief 18, ECF No. 91.)  OSU objects, asserting that Plaintiff has not demonstrated

any similarity between his claims and these two cases and also points out that none of the

decision-makers overlapped.  Further, the *Waters* case involved employment termination, not

student dismissal, and the earlier *Doe* case is included on the spreadsheet of statistical data

discussed *supra*.  (OSU's Resp. at 28–29, ECF No. 96.)  As Plaintiff has made only conclusory

assertions of relevance, OSU need not further respond to Request for Production Nos. 39–40.[4]

## G.      Award of expenses under Fed. R. Civ. P. 37(a)(5)

Neither Plaintiff's brief in support of his motion nor his reply brief contain any argument

in support of an award of expenses for filing the present motion beyond a one-sentence request

---

[3] OSU also objects that these requests are vague because "OSU doesn't understand what Plaintiff is seeking by asking for a 'copy' of a website." (OSU's Resp. at 28, ECF No. 96.)  Because the Court finds the requested documents not relevant, the undersigned need not determine whether the request is vague or ambiguous.

[4] Plaintiff also counters OSU's assertion of undue burden by suggesting that "the document exchange in those cases more likely than not happened electronically.  Defendant can simply forward the production." (Pl.'s Reply at 20, ECF No. 97.)  Though likely true, the ease of production cannot overcome a lack of relevance.

for such an award.  (Pl.'s Brief 18, ECF No. 91; Pl.'s Reply 21, ECF No. 97.)  Although Fed. R. Civ. P. 37(a)(5) provides for a mandatory award of reasonable expenses, including attorney's fees, incurred in filing a successful motion to compel, the award is not mandatory if a motion to compel is granted in part and denied in part as it is here.  Fed. R. Civ. P. 37(a)(5)(C).  As Plaintiff has not offered any reason why an award of expenses should issue in this case, Plaintiff's request is **DENIED**.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel is **GRANTED IN PART and DENIED IN PART**.  OSU is **ORDERED** to provide further written discovery responses and document production as outlined above.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

16